MALCOLM CALHOUN et al., Appellants, *v.* GEORGE H. MILLARD
et al., Respondents.

The surrender and cancellation of written instruments which are illegal
and void may not be claimed as a matter of absolute right; the court
may, in the exercise of a sound discretion, refuse to grant this relief,
leaving the party to his defense at law when the instrument is sought to
be enforced against him.

It is the practice of equity courts to remain inactive when a party seek-
ing their interference has been guilty of unreasonable *laches* in making
his application.

While a municipal corporation cannot, by recognition and subsequent
ratification, validate obligations which they had no power to create, yet
long acquiescence on its part without action or protest, repeated recog-
nitions of the validity of the obligations by payments are pertinent con-
siderations for a court of equity, when called upon to decree their sur-
render and cancellation, in determining as to whether it will exercise its
jurisdiction.

The period of limitation of equitable actions fixed by the statute is not,
where a purely equitable remedy is invoked, equivalent to a legislative
direction that no period short of that time shall be a bar to relief in any
case; nor does it preclude the court from denying relief in accordance
with equitable principles for unreasonable delay, although short of the
statute period.

Where, in an action brought under the act of 1881 (Chap. 531, Laws of
1881) by tax-payers of the town of A. against certain holders of bonds
of the town, issued in aid of the construction of the D. & M. railroad, it
appeared that after its commencement an action was brought ostensibly
in the name of a bondholder against the town to recover interest on
certain of said bonds, in which it was decided that said bonds were void
(93 N. Y. 405), but it also appeared that said action was brought at
the instance of the supervisor of said town, that the interest coupons on
which it was brought were paid for out of the moneys of said town, that
the attorneys who prosecuted and defended the action were paid by the
town, as were all other expenses, and that the action was brought and
defended for the purpose of having said bond declared invalid; *held,*
that the adjudication in the former action was an estoppel only as
between the parties thereto, and did not stand in the way of a re-ex-
amination by the court of the grounds upon which it proceeded, or
prevent it from considering new facts not disclosed in the other action
which would, if then disclosed, have led to a different result.

The bonds were alleged to be void for the reason, among others, that the
proper consents of the taxpayers were not obtained as required by the

act under which they were issued. (Chap. 907, Laws of 1869.) The county judge decided that the proper consents were obtained, and the bonds were not void on their face. The bonds, which were payable thirty years from date with semi-annual interest, were issued in 1872. In each year thereafter a tax was levied on the town to pay the interest, which was regularly paid as it accrued up to September 1, 1881, and in 1878 the town voted a tax of $3,000, with which they paid and retired that amount of bonds. The railroad was never put in operation, but during 1872, 1873 and 1874 the company expended within said town a sum greater than the amount of the bonds issued by it. In 1875, by vote at a town meeting held pursuant to the act of 1874 (Chap. 453, Laws of 1874), a sale of the stock received by the town in exchange for its bonds was authorized. The stock was not sold, and in December, 1881, the road was sold under a foreclosure. This action was commenced December 6, 1881. The court found that the individual defendants purchased their bonds in good faith for not less than par and accrued interest, without notice of any claim by the officers or taxpayers of the town of any defense thereto or any suspicion of their invalidity. The complaint was dismissed. *Held*, no error; that the long acquiescence of the town in the bonding proceeding without action or protest, its repeated recognition of the validity of the bonds by payments, justified the court in refusing to exercise its equitable powers.

*Town of Springport* v. *T. S. Bank* (84 N. Y. 403); *Metzger* v. *A. & A. R. R. Co.* (79 id. 171); *Town of Mentz* v. *Cook* (108 id. 504), distinguished.

The supervisor of the town was made a party defendant. The complaint asked that he be restrained from paying interest falling due on said bonds out of moneys duly collected by taxation, paid over to him and in his hands for that purpose. *Held*, that such payment, if made, would not be an illegal act or constitute waste within the meaning of said act of 1881; and so that the action as against said officer was not maintainable.

(Argued March 6, 1890 ; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made May 9, 1888, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Isaac H. Maynard* for appellants. The invalidity of the bonds in suit is no longer an open question. (*Craig* v.

*Town of Andes,* 93 N. Y. 405, 417 ; 2 R. S. [7th ed.] 1554, 1555, § 22 ; *People ex rel.* v. *A. Co.,* 57 Barb. 656 ; *B. & O. T. Co.* v. *North,* 1 Hill, 518 ; *T. & B. R. R. Co.* v. *Tibbitts,* 18 Barb. 298 ; *F. E., etc., P. R. Co.* v. *Payne,* 15 N. Y. 583 ; Laws of 1850, chap. 140 ; Hardcastle on Stat. 67 ; *People* v. *Smith,* 55 N. Y. 135 ; *Town of Wellsborough* v. *N. Y. & C. R. R. Co.,* 76 id. 182 ; *Cowdrey* v. *Town of Canadia,* 16 Fed. Rep. 532 ; *Ely* v. *Holton,* 15 N. Y. 595 ; *S. S. Bank* v. *Town of Seneca Falls,* 86 id. 317 ; *People* v. *Board of Supervisors,* 43 id. 130 ; *People* v. *Spencer,* 55 id. 1 ; *People* v. *Green,* Id. 156.) The bonds were unlawfully issued, for the reason that there was no proof of the due incorporation of the Delhi and Middletown Railroad Company. On the contrary, it affirmatively appears that it was never a railroad company *de jure.* (*B. T. Co.* v. *North,* 1 Hill, 518 ; *T. & B. R. R. Co.* v. *Tibbitts,* 18 Barb. 297 ; *F. E., etc., P. R. Co.* v. *Payne,* 15 N. Y. 583 ; *Craig* v. *Town of Andes,* 93 id. 405 ; *Farnham* v. *Benedict,* 107 id. 159.) The proceedings before the county judge of Delaware county were a nullity, and his adjudication void, for the reason that he was a stockholder of the Delhi and Middleton Railroad Company, in aid of which the proceedings were taken. (3 R. S. [6th ed.] 436, 437, §§ 2, 8 ; Laws of 1847, chap. 280, § 81 ; *W. Ins. Co.* v. *Price,* Hopk. Ch. 1 ; *Jewell* v. *A. C. Bank,* Clark. Ch. 179 ; *Darling* v. *Pierce,* 15 Hun, 542 ; *Wingand* v. *Dejonge,* 8 Abb. [N. C.] 260 ; Code Civ. Pro. § 342 ; Old Code, § 30, subd. 13 ; *Oakley* v. *Aspinwall,* 3 N. Y. 547.) The petition was insufficient to confer jurisdiction because of its omission to state that the Delhi and Middleton Railroad Company, in aid of which the bonds were to be issued, was a corporation in the state of New York, or, in other words, was a domestic corporation. (Laws of 1869, 2303, chap. 907, § 1 ; *People* v. *Spencer,* 55 N. Y. 1 ; *People* v. *Van Valkenburgh,* 63 Barb. 105 ; *People* v. *A. Co.,* 57 id. 661 ; *People* v *Franklin,* 5 Lans. 129.) The notice published by the county judge of the hearing was fatally defective in not specifying a place where the hearing was to be had. (*Stewart* v. *Smith,* 17 Wend. 517 ; Laws of 1869,

chap. 907, § 2 ; 1 R. S. [6th ed.] 913 ; 3 id. 326, 327 ; *Mundy* v. *McCutcheon*, 95 Penn. St. 435.) The court erred in holding that the eight so-called " anomalous assessments " should be counted as only eight taxpayers and non-assenters. (*Wheeler* v. *Anthony*, 10 Wend. 346.) The plaintiffs were entitled to a decree adjudging that the supervisor of the town be restrained from paying the moneys in his hands, or any part of it, to the defendants, in payment of the coupons of these bonds, or any of them ; that the defendant bondholders be perpetually restrained and enjoined from collecting or enforcing payment thereof, or of the bonds, from the funds and property of the town, and that the bonds be canceled, brought into court and delivered to the clerk for that purpose. (Code, § 1985 ; chap. 531, Laws of 1881, chap. 161, Laws of 1872 ; *Phelps* v. *Hawkey*, 52 N. Y. 23 ; *Hudler* v. *Golden*, 36 id. 446 ; *Olcott* v. *T. R. R. Co.*, 20 N. Y. 210 ; *Weed* v. *Tucker*, 19 id. 422 ; *Ayers* v. *Lawrence*, 59 id. 192 ; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 171 ; *Latham* v. *Richards*, 12 Hun, 360 ; *Town of Springport* v. *T. S. Bank*, 75 N. Y. 397 ; 84 id. 397 ; *People* v. *Brown*, 55 id. 180 ; *F. N. Bank* v. *Wheeler*, 72 id. 201 ; *Hulburt* v. *Banks*, 1 Abb. [N. C.] 161 ; *Rogers* v. *Stephens*, 86 N. Y. 623 ; *Osterhoudt* v. *Rigney*, 98 id. 239 ; 1 High on Inj. 9, § 2 ; *N. Y. P. & D. Co.* v. *Fitch*, 1 Paige, 98 ; *Ogden* v. *Kipp*, 6 Johns. Ch. 160 ; *Warren* v. *Baldwin*, 105 N. Y. 537.) Relief cannot properly be denied upon the ground of any delay in bringing the action. (*Simar* v. *Canaday*, 53 N. Y. 298 ; *Palmer* v. *Davis*, 28 id. 242 ; *Cruger* v. *Dougherty*, 43 id. 107 ; *Cagwin* v. *Town of Hancock*, 84 id. 532 ; *Potter* v. *Town of Greenwich*, 26 Hun, 330 ; 92 N. Y. 662 ; *Brownell* v. *Town of Greenwich*, 114 id. 518 ; *Weismer* v. *Village of Douglass*, 64 id. 105.) The plaintiffs' cause of action is not barred by the Statute of Limitations. (*People* v. *Ingersoll*, 58 N. Y. 1 ; *People* v. *Field*, Id. 491 ; *Town of Venice* v. *Woodruff*, 62 id. 462 ; *Doolittle* v. *Bd. Suprs.*, 18 id. 155 ; *Roosevelt* v. *Draper*, 23 id. 318 ; *Kilbourne* v. *St. John*, 59 id. 21 ; *Ayers* v. *Lawrence*, Id. 192 ; *Guest* v. *City of Brook-*

*lyn,* 69 id. 506; *Osterhoudt* v. *Rigney,* 98 id. 222; *Dunning* v. *O. N. Bank,* 6 Lans. 296; 61 N. Y. 497; *Bucklin* v. *Ford,* 5 Barb. 393: *Wenman* v. *M. Ins. Co.,* 13 Wend. 267; *Davis* v. *Garr,* 6 N. Y. 124; Angell on Lim. §§ 54–62; *Brownell* v. *Town of Greenwich,* 114 N. Y. 518; *F. N. Bank* v. *Wheeler,* 72 id. 201; *Goodrich* v. *Wheeler,* Id. 601; *People* v. *Brown,* 55 id. 180; *Miner* v. *Beekman,* 50 id. 338; *Hubbell* v. *Medbury,* 53 id. 99, *Arnold* v. *H. R. R. R. Co.,* 55 id. 661; Laws of 1869, chap. 907; *Schoener* v. *Lissauer,* 107 N. Y. 111.) The plaintiffs are in no way estopped. The payment of the interest and a part of the principal does not conclude them. (*Simar* v. *Canaday,* 53 N. Y. 298; *Palmer* v. *Davis,* 28 id. 242: *People* v. *Wagner,* 7 Lans. 467; Bigelow on Estop. 141, 142.) The fictitious transfer of the bonds during the pendency of the action cannot help the defendants. (*McCullough* v. *Colday,* 4 Bosw. 603; 5 id. 477; *Watson* v. *Hudson,* 17 Abb. Pr. 184; *Buchanan* v. *Comstock,* 57 Barb. 582; *Hare* v. *Van Duzen,* 32 id. 92; *Outhout* v. *Ballard,* 41 id. 33; *Smith* v. *Aylesworth,* 40 id. 104.) The objection that the defendant Ballantine, supervisor, etc., was not a party to the appeal to the General Term is untenable. (*H. F. Ins. Co.* v. *Tomlinson,* 58 N. Y. 915; *Jamison* v. *C. S. Bank,* 85 id. 546.) The court improperly granted an order making an extra allowance of costs to the amount of $1,250, or two and one-half per cent upon $50,000. (*Conaughty* v. *S. C. Bank,* 92 N. Y. 401; *O. & L. C. R. R. Co.* v. *V. C. R. R. Co.,* 63 id. 176; *Lattimer* v. *Livermore,* 72 id. 174; *A. D. Co.* v. *Sibly,* 45 id. 499; *People* v. *A. & S. R. R. Co.,* 5 Lans. 35.)

*John B. Gleason* for respondents. The court should dismiss the appeal from the order of the General Term denying the plaintiffs' motion to have the notice of appeal amended *nunc pro tunc.* This order was not appealable to this court. (*Riggs* v. *Waydell,* 78 N. Y. 586.) The complaint was properly dismissed upon the merits as to the defendant James Ballantine, supervisor. (*Kilbourne* v. *St. John,* 59 N. Y. 21; Laws of 1872, chap. 161; Code Civ. Pro. § 1925; Laws of

1881, chap. 531 ; Laws of 1887, chap. 673 ; *People* v. *Brown*, 55 N. Y. 187 ; *F. N. Bank* v. *Wheeler*, 72 id. 206 ; *People* v. *Mead*, 36 id. 224.) The plaintiffs cannot maintain this action as taxpayers against the defendants as *bona fide* holders of town bonds. (*Alvord* v. *S. S. Bank*, 34 Hun, 143.) The defendants had a right to sell their bonds, and the complaint was upon this ground properly dismissed as to all the respondents except the town of Delhi and John R. Newkirk, who did not sell their bonds. (*Beals* v. *Cameron*, 3 How. Pr. 414 ; Moak's Van Santvoord's Pl. 254, 653 ; *Willis* v. *Chipp*, 9 How. Pr. 568 ; *Church* v. *Frost*, 3 T. & C. 320.) This action was brought to compel innocent purchasers to surrender bonds purchased and held upon faith in their validity and endorsed by the action of the town, and should be dismissed. (*Calhoun* v. *D. & M. R. R. Co.*, 28 Hun, 379, 395 ; 2 Story's Eq. Jur. §§ 293, 1520 ; 1 Dillon on Mun. Corp. § 548 ; *Town of Venice* v. *Woodruff*, 62 N. Y. 465 ; *Craig* v. *Town of Andes*, 93 id. 415 ; *Alvord* v. *S. S. Bank*, 98 id. 599.) The acquiescence for ten years by the town of Andes and its taxpayers, and their many affirmative acts of ratification by the payment of interest and principal, and the retention of the stock, should be held to constitute an estoppel, establishing the validity of the bonds, at least as to these defendants. (*Young* v. *Campbell*, 75 N. Y. 525.) The plaintiffs' cause of action is barred by the Statute of Limitations. (*Bruce* v. *Tilson*, 25 N. Y. 194, 203 ; *Alvord* v. *S. S. Bank*, 98 id. 599.) The bonds are valid. In a collateral proceeding against purchasers in good faith and for value this court ought not to hold that bonds are void for defects in fact immaterial, but which might have been considered in a direct proceeding to review the adjudication of the county judge. (Code Civ. Pro. § 721 ; 2 R. S. 425 ; *Town of Lyons* v. *Munson*, 99 U. S. 684 ; 93 N. Y. 419 ; *People* v. *Peck*, 4 Lans. 528 ; *Ely* v. *Holton*, 15 N. Y. 595 ; *In re Miller*, 110 id. 216 ; *Rogers* v. *Stephens*, 86 id. 625 ; *Williams* v. *Town of Duanesbergh*, 66 id. 129 ; Bouvier's L. Dict. 5 ; Co. Lit. 201, 205 ; *Craig* v. *Wells*, 11 N.Y. 315 ; *Moore* v. *Wells*, 47 Barb. 262 ; *Hogeboom* v. *Hall*, 24 Wend. 146 ; *Chapin* v.

*Harris*, 8 Allen, 595; *Sohier* v. *T. Church*, 109 Mass. 19; Laws of 1874, chap. 453; Laws of 1875, chap. 153; Morawetz on Corp. § 11; *Farnham* v. *Benedict*, 107 N. Y. 159; *In re Ryers*, 72 id. 1; *People* v. *City of Kingston*, 101 id. 82, 95; *Stuart* v. *M. & F. Bank*, 19 Johns. 495.) An order granting an extra allowance to defendants in an action of this kind is within the power of the Supreme Court, and is not appealable to this court. (*Comins* v. *Bd. Suprs.*, 64 N. Y. 626; 3 T. & C. 296; *Williams* v. *W. U. T. Co.*, 51 How. Pr. 307; *Riley* v. *Hurbert*, 14 Wkly. Dig. 101; *Sickles* v. *Richardson*, 14 Hun, 310.)

ANDREWS, J. This action was commenced January 6, 1882, by the plaintiffs, certain taxpayers of the town of Andes, in the county of Delaware, in behalf of themselves and all other taxpayers in said town against the Delhi and Middletown Railroad Company, the supervisor of said town and certain other defendants, holders of bonds to the amount of about $50,000, dated September 1, 1871, part of $98,000 of bonds,. with interest coupons attached, purporting to have been issued by commissioners in behalf of said town, under and in pursuance of chapter 907 of the Laws of 1869, in aid of the construction of the Delhi and Middletown railroad. The complaint sets forth that the bonds were issued without authority and were void for the reason, among others, that the proper consents required by the act of 1869, were not obtained, and demanded equitable relief, first, that the defendant Ballantine, supervisor of said town, be restrained and enjoined from paying the interest falling due on such bonds March 1 and September 1, 1882, out of the sum of $6,650 in his hands, levied and collected for the payment of such interest; and second, that the bonds held by the individual defendants be decreed to be delivered up and canceled.

The question of the validity of the bonds of the town of Andes, issued under the act of 1869, was presented to and adjudicated by this court in the case of *Craig* v. *Town of Andes* (93 N. Y. 405). It was there decided, for reasons disclosed in the prevailing opinion, that the bonds were void

That action was brought after the commencement of the present one, to recover interest on certain of the bonds, which fell due March 1, 1882. It now appears from the evidence in this action that the Craig suit was brought at the instance of Ballantine, the supervisor of the town, and the trial judge found "that the coupons on which the action was brought were paid for out of the moneys of said town, and said action was prosecuted by attorneys paid by said town and was defended by attorneys paid by said town; said town paying all the expenses thereof; and the suit was brought and defended for the purpose of procuring the bonds of said town to be declared invalid."

We fully assent to the claim of the counsel for the bondholders, that an adjudication obtained under such circumstances ought not to stand in the way of a re-examination by the court of the grounds upon which it proceeded, and if we were now satisfied either that upon the facts presented in that case the question of law was erroneously decided, or that facts not disclosed on the trial of the *Craig Case*, but now brought out, would, if then disclosed, have led to a different result, the circumstances stated would emphasize the duty of the court to correct its error, or to conform the judgment in the present case to the new circumstances.

It is claimed that material facts bearing upon the validity of the bonds, not shown on the trial of the *Craig Case*, were proved on the trial of the present one, prominent among which is the fact which now appears, that the railroad in aid of which the bonds were issued had been in fact legally located on the identical route specified in the conditional consents prior to May 6, 1871, the date of the presentation of the petition and consents to the county judge. But we deem it unnecessary to determine whether the new facts presented affects the principle of our former decision, for the reason that we think the judgment below dismissing the complaint in this action, was properly rendered, assuming the invalidity of the bonds.

It will be convenient to consider separately the two purposes of this action, viz. : The surrender and cancellation of

the bonds held by the individual defendants, and the separate
and distinct relief by injunction to prevent the defendant
Ballantine from applying the money in his hands to the pay-
ment of interest.   The jurisdiction of a court of equity to
compel the surrender and cancellation of written instruments
obtained by fraud, or which being void for any reason may,
if outstanding, subject the plaintiff to loss or injury, is very
ancient and has been frequently exercised.   The plaintiff
seeking this relief invokes the equitable powers of the court,
and the court grants or refuses it, in the exercise of a sound
discretion, according to the circumstances of the particular
case.   The granting of this relief cannot be claimed as a mat-
ter of "absolute right *ex debito justitiæ*, such as a party has to
recover an amount due on a contract or for damage for a tort."
The existence of jurisdiction and the fact that plaintiff makes
out that the instrument of which he seeks the surrender and
cancellation is void, are not conclusive of his right to a final
decree in his favor.   The court may, nevertheless, refuse to
exercise the jurisdiction and leave the party to his defense at
law, when the instrument is sought to be enforced against
him.   But in entertaining or declining jurisdiction, the court
does not act capriciously, but is guided by principles which
have gradually been evolved in the course of adjudication.   It
is apart from our present purpose to arrange or classify the
cases upon the subject.   The general grounds of jurisdiction
and the circumstances which justify equitable interference, or
on the other hand, the denial of equitable relief, are set forth
in the text books and illustrated by decided cases.   We refer
to a few of the decisions in this court upon the subject.
(*Heywood* v. *City of Buffalo*, 14 N. Y. 540; *Town of Venice*
v. *Woodruff*, 62 id. 462; *Town of Springport* v. *Teutonia
Savings Bank*, 75 id. 397.)

The facts in the present case present several elements which
have entered into the consideration of the court in granting
relief for the cancellation of written instruments.   The bonds
of the town of Andes are, as we have assumed, void, and,
since the commencement of this action, they have been so

adjudicated, but the adjudication is an estoppel only as between the parties to the action in which it was made. The other bondholders are not concluded and may contest over again the question of the validity of the bonds. There exists, also, the further element that the bonds are not void on their face, and that, in a suit brought thereon, the proof of the adjudication of the county judge that the requisite consents had been obtained, would presumptively establish performance of the condition as to consents in the bonding act, and cast upon the town the *onus* of disproving it and showing that, in fact, the requisite consents had not been given. (*Craig* v. *Town of Andes*, 93 N. Y. 410.)

It also appears by the record that the bonds are held by numerous parties, each of whom might bring an action at law to enforce them, unless prevented by the equitable interposition of the court for their cancellation. In the case of the *Town of Springport* v. *Teutonia Savings Bank* (84 N. Y. 403), the court sustained an action for the cancellation of town bonds, upon facts substantially similar to those presented in this case, with the important exception, however, that there the town had acted promptly in repudiating the bonds, and in seeking to review the proceedings under which the right to issue them was claimed. In that case the adjudication of the assessor was made March 13, 1871. The town procured a writ of certiorari to review and set aside the bonding proceedings April 13, 1871, and they were set aside in that proceeding by the judgment of this court in June, 1873. The defendants purchased the bonds in September, 1871, pending the litigation on the certiorari, and in January, 1875, the suit for cancellation was commenced. The town had paid no interest on the bonds and refused in any way to recognize their validity.

This court also in the case of *Metzger* v. *Attica and Arcade Railroad Co.* (79 N. Y. 171), affirmed a judgment cancelling town bonds issued in aid of the Attica and Arcade Railroad Company, on the ground that they were issued without authority. The bonds in that case were delivered by town

commissioners to the railroad company in exchange for its stock, March 21, 1874. The suit for cancellation was commenced in January, 1876, less than two years thereafter. The commissioners were joined with the railroad company as defendants in the action, and the complaint alleged collusion between the defendants to impose the bonds upon the town. The bonds had not been transferred by the company and the town had paid no interest.

The case of the *Town of Mentz* v. *Cook* (108 N. Y. 504), sustained a decision of the Special Term of the Supreme Court decreeing the cancellation of town bonds on the ground of a defect in the petition by which the proceedings to bond the town were initiated. The road in aid of which the bonds were issued had never been constructed, and, after paying interest on the bonds for a single year, the town repudiated its liability and commenced an action for their cancellation.

The present case, for the first time in the history of the litigations growing out of the town-bonding acts in aid of railroads in this state, presents the question whether the equitable remedy for cancellation may be refused by reason of long delay and acquiescence on the part of the town and its taxpayers, accompanied meanwhile by frequent acts recognizing the validity of the obligations of which cancellation is sought, although the delay in bringing the action has not continued for the full statutory period of limitation of equitable action. It is important to state the material facts bearing upon the question. The adjudication of the county judge that the persons who signed the petition in the bonding proceedings constituted a majority of the taxpayers of the town of Andes in number and amount of taxable property, was made May 22, 1871. The bonds (except a part not now material) were issued and delivered to the railroad company, in exchange for its stock, between June 13 and December 10, 1872. They were payable in thirty years from date, with semi-annual interest at seven per cent. In each year for nine years and more a tax was levied on the town to pay the interest on the bonds, and it was regularly paid as it accrued up to September

1, 1881, and in 1878 the town meeting voted a tax of $3,000 to pay that amount of the bonds, and they were so paid and retired. The railroad in aid of which the bonds were issued was never put in operation. But the company, during 1872, 1873 and 1874, expended in grading and other construction within the town of Andes, a sum greater than the amount of bonds issued by the town. In 1874 a town meeting was held pursuant to chapter 453 of the Laws of 1874, to determine whether the town commissioners should be authorized to sell the stock taken in exchange for the bonds, and it was decided that such authority should not be given. In 1875, on a new vote being taken under chapter 153 of the Laws of 1875, a sale was authorized. The stock was not sold, and in December, 1881, was practically extinguished by a sale of the railroad under a foreclosure. This action was commenced December 6, 1881, more than ten years after the adjudication of the county judge, and nine years and more, but less than ten years after the issue of the bonds. The trial judge found that the individual defendants purchased the bonds held by them in good faith, paying therefor not less than par and accrued interest, without notice of any claim by the officers or taxpayers of the town that there was any defense thereto, or any suspicion of their invalidity.

It cannot be doubted that if obligations of an individual having general power to contract had been issued without his authority, but he afterward permitted them to be dealt with by the public as valid securities, and had recognized their validity by frequent payment of interest, and by payment of a portion of the principal, these acts would have constituted a ratification of the unauthorized obligations and have precluded the obligor from denying their validity. Under the decisions in this state similar acts on the part of a town or other municipality recognizing the validity of bonds issued under the bonding acts, would not estop the municipality issuing them from denying their validity on the ground that essential conditions provided in the bonding acts had not been complied with. By our decisions the obtaining of consents,

to the extent and in the mode prescribed in the acts, is of the very substance of the power conferred upon municipal corporations to issue bonds for the purposes contemplated, and bonds issued without the requisite consents are held to have been issued without authority. Municipal corporations, since they possess no general authority to issue such bonds, cannot, by recognition or subsequent ratification, validate obligations which they had no power to create. This point was involved in *Craig* v. *Town of Andes*, where the question of estoppel was raised and overruled, and the decision on this point accords with the tenor of the cases in this state. ( *Weismer* v. *Village of Douglas*, 64 N. Y. 105 ; *Cagwin* v. *Town of Hancock*, 84 id. 542 ; *Starin* v. *Town of Genoa*, 23 id. 439.) The dismissal of the complaint in this action cannot, therefore, rest upon the ground of estoppel or ratification, but the acts of the town, its long acquiescence, without action or protest, in the bonding proceedings, its repeated recognition of the validity of the bonds by payments, are pertinent considerations where the court is called upon, after a long delay, to exert its equitable powers in decreeing their surrender and cancellation.

It is and always has been the practice of courts of equity to remain inactive where a party seeking their interference has been guilty of unreasonable laches in making his application. (Story's Eq. Jur. § 1520.) The principle is stated with great force and clearness by Lord CAMDEN in *Smith* v. *Clay* (2 Ambl. 645) : " Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing. *Laches* and neglect are discountenanced and, therefore, from the beginning of this court, there was always a limitation to suits in this court."

Courts of equity, it has been said, act not so much in analogy to, as in obedience to statutes of limitation of legal actions, because where the legal remedy is barred, the spirit of the statute bars the equitable remedy also.

In the present case, the cause of action for the cancellation of the bonds was not barred by the ten years' statute applicable

to equitable actions. But a period of nine years had elapsed after the bonds were issued, before the commencement of the action. But we apprehend that the period of limitation of equitable actions, fixed by the statute, is not where a purely equitable remedy is invoked, equivalent to a legislative direction that no period short of that time shall be a bar to relief in any case, or precludes the court from denying relief in accordance with equitable principles for unreasonable delay, although the full period of ten years has not elapsed since the cause of action accrued. The ten years' limitation was primarily designed to shield defendants (*B. & N. Y. C. R. R. Co. Dudley,* 14 N. Y. 352), and it must be true that a court, in the exercise of its equitable jurisdiction, could not entertain or enforce a cause of action barred by the statute, and not within any exception, acting upon any general equitable considerations. But, in enforcing purely equitable remedies, depending upon general equitable principles, unreasonable and inexcusable delay is an element in the plaintiff's case, which a court of equity always takes into consideration in exercising its discretion to grant or refuse relief, and is not a mere collateral incident. Where there is a remedy at law, whereby the plaintiff can prosecute or defend his legal right, the refusal of relief leaves the parties where they were. If there are special circumstances which may change the situation of the plaintiff to his injury, unless the equitable remedy is interposed, this fact may be considered. But the right of the court to deny relief upon equitable grounds, for long delay, although short of the statute period of limitation, is in the nature of a defense, and is not, we think, taken away by the statute. There may be a well-founded distinction between the case of an application for an equitable remedy in aid of, or to enforce a legal right not barred by the statute, and the case where an exclusively equitable remedy is sought, such as to restrain proceedings at law, or upon the principle *quia timet*, to deprive an adversary of the muniment of his alleged legal right, which he inequitably retains. In cases of the latter class, long delay or acquiescence, although short of the

statute period for the limitation of equitable actions, may be a ground for refusing relief. (Pom. Eq. Jur. § 817.) The cancellation of securities is a purely equitable remedy, and cannot be claimed as an absolute right, nor is it applied for, or awarded in aid of a legal right or title.

We conclude, therefore, that it was within the power of the court to dismiss the complaint, so far as relief was sought for a cancellation of the bonds, on the ground of delay in bringing the action. The circumstances justified the conclusion on this branch of the case. The town and the taxpayers permitted the bonds to be dealt with and taken by savings banks and others for nearly ten years, not only without, so far as appears, a word of warning or protest, but by affirmative acts of recognition, encouraged investment therein as safe and valid securities. The bonds, resting on the adjudication of the county judge, were apparantly valid. The legislature has still the power to ratify them and make them valid obligations of the town. (*Williams* v. *Town of Duanesburgh*, 66 N. Y. 129; *Horton* v. *Town of Thompson*, 71 id. 513; *Rogers* v. *Stephens*, 86 id. 623.) They are now in the hands of *bona fide* holders, that is, of persons who have paid value for them without notice. The fact that if the plaintiffs are defeated here, the bonds may be sued upon and enforced in another jurisdiction, constitutes no equitable reason for maintaining the action. (*Town of Venice* v. *Woodruff, supra.*)

The judgment denying relief for the cancellation of the bonds is incidentally supported by the opinion in *Craig* v. *Town of Andes*, wherein the learned judge by whom it was pronounced, referring to the judgment in the present case in the Supreme Court, said: " Nor is the correctness of that decision in question here, for a court of equity might, in its discretion, refuse to interfere, and leave the party to his legal rights." And in *Alvord* v. *S. S. Bank* (98 N. Y. 599), Judge FINCH recognizes the doctrine that a court of equity would not lend its aid in a case of inexcusable *laches* of the party seeking relief. The denial of relief in this case may result practically in the enforcement of the bonds in question,

and also of other town bonds issued and held under similar circumstances. But in contrasting the relative conduct and situation of the town and the taxpayers on the one side, and the purchasers of bonds on the other, we cannot say that such a result will be repugnant to any principle of justice or equity.

The right of the plaintiffs to maintain the action, so far as it seeks to enjoin and restrain the defendant Ballantine from paying the interest on the bonds for the year 1882 out of money in his hands levied and collected for that purpose, depends upon the question whether such payment, if made, would be an illegal act or constitute *waste* under chapter 531 of the Laws of 1881. This act, which superseded the original legislation on the subject, initiated by chapter 161 of the Laws of 1872, is entitled "An Act for the Protection of Taxpayers," and in its first section authorizes an action to be prosecuted by taxpayers against officers, agents, commissioners or other persons acting on behalf of any county, town, village or municipal corporation, " to prevent any illegal act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to any property, funds or estate of such county, town, village or municipal corporation."

By act, chapter 234 of the Laws of 1879, the office of railroad commissioner in the several towns in Delaware county was abolished, and the duties appertaining thereto were imposed upon the supervisors of the several towns. It was made the duty of the supervisor of each town to report to the board of supervisors each year the amount of interest on railroad bonds of the town falling due in that year, and the act provides " that the said amount shall be raised by tax as now provided by law, and paid by the collectors of the taxes to the said supervisors, and by them applied in payment of the interest and coupons aforesaid." The defendant Ballantine, as supervisor of the town of Andes, in the fall of 1881, reported to the board of supervisors of Delaware county the amount required to be raised to pay the interest falling due on the railroad bonds of the town for the year 1882, viz.: the sum of $6,650, and the board of supervisors, at its annual session

in the fall of 1881, included in its warrant, for the collection of taxes in the town of Andes, the sum so reported, and this amount was duly collected and paid over to the supervisor pursuant to the direction of such warrant for the purpose of paying the interest on the bonds, and the sum so collected remains in his hands. The plaintiffs, in their characters as taxpayers, seek to prevent the supervisor of the town of Andes from performing the duty imposed upon him by the act of 1879, and from applying the money to the purpose for which it was raised. We are of opinion that the payment by the supervisor of the interest on the bonds out of the fund would neither be an illegal act nor constitute waste within the statute of 1881. The bonds were, under the adjudication of the county judge, presumptively valid obligations of the town. When the money in question was raised their validity had not been impeached by any judicial decision. The town had for a long time recognized their validity. The taxpayers acquiesced for many years in the measures taken to raise money by taxation to pay the interest on the bonds. In 1874 and 1875, in their collective capacity in the town meetings, they voted upon the question of the sale of the stock held by the town at elections held under acts of the legislature in these years, which acts, while they did not have the effect of legalizing the bonds which were the consideration for the stock authorized to be sold, nevertheless assumed their validity. The bonds were not illegal or void in the sense that they were fraudulently issued or issued without consideration. They were exchanged for stock, and the railroad company, concurrently with the subscription therefor, entered into an agreement with the railroad commissioners that the proceeds of the bonds should be used for the construction and equipment of the railroad company within the town of Andes, and this agreement was performed. It is not claimed that there was any fraud or collusion in the bonding proceedings. The bondholders are innocent holders, for full value, of the securities thus issued. It is very clear, we think, that neither the town nor the taxpayers would be permitted to recover back the

money actually paid by the town to the bondholders as money illegally paid and received. It was paid upon presumptively valid obligations, under a claim of right on their part to receive it, and if payments actually made by the officers of the town would be valid and binding, it would not, we think, be an illegal act on the part of the supervisor, under the act of 1881, to apply the money now in his hands according to the direction of the statute, simply for the reason that the validity of the bonds is now questioned.

The question of the duty of the officer holding money raised to pay interest on bonds issued under the Town Bonding Acts, to make such payment, notwithstanding some omission or defect in the bonding proceedings, which rendered the bonds invalid, has been considered by this court in several cases. (*People ex rel.* v. *Brown*, 55 N. Y. 180; *First Nat. Bank* v. *Wheeler*, 72 id. 201.) We held in each of these cases that an officer who had in his hands money collected to pay interest on town bonds could not be permitted to question their validity when called upon to pay it over to those entitled to it under the statute. In one case the collector of the town refused to pay the money collected by him to the town commissioners as required by the act, and the other, the town commissioners, after they had received it, refused to pay it to the bondholders, and in the case last cited the action of a bondholder to compel such payment was sustained. In both cases the defense was made that the bonds were void, and in both the defense was interposed pursuant to resolutions of the town meeting of the town whose bonds were in question.

The money, the payment of which is sought to be restrained in this action, had been collected in usual course from the taxable property of the town of Andes. Neither the town nor the taxpayers intervened to prevent its collection. So far as appears the taxpayers paid the money voluntarily, and have no recourse to recover it back. The money does not belong to them, nor, in a strict sense, is it the property of the town. It was raised for a special purpose, and it can be applied legally to no other. The act of 1881 should have a broad and

liberal construction to accomplish the purposes of its enact-
ment.    But it is difficult to perceive how that can be treated
as an illegal act, or as constituting waste, the performance of
which may be compelled by mandamus.   We do not doubt
that taxpayers may, by means of this statutory action, arrest
the payment of money collected to pay fraudulent or collusive
claims against a town having neither a legal nor equitable
foundation.    We confine our judgment to a case of money
raised to pay a claim apparently valid, which has been so
treated by the town and its taxpayers having implied legisla-
tive sanction, and where no fraud is imputed.   In such case
we think the taxpayers cannot arrest the payment under the
act of 1881.   If in this case judgment was given for a cancel-
lation of the bonds, then it might follow that the fund would
be left where it is, as there would be no debt in fact or in
form to which it could be applied.   (*Metzger* v. *Attica &
Arcade R. R. Co.*, *supra*.)

We think the judgment should be affirmed.

All concur.

Judgment affirmed.