NATHANIEL S. SIMPKINS, Respondent, *v.* WILLIAM H. TAYLOR, Appellant, Impleaded with Others.

*Reformation of a written instrument — burden and amount of proof — a guaranty of collection may be changed to one of payment.*

To justify the reformation of a written instrument the plaintiff, in an action brought for that purpose, is bound to establish the mutual agreement of all parties to the instrument to the precise contract alleged to have been, in fact, the original agreement, and that the written instrument failed to express the common agreement, because of accident or of mutual mistake of all the parties, or by mistake on one side, induced by fraud on the other; the burden rests upon him to establish both of such propositions, not merely by preponderance of evidence, but by proof so clear and convincing as to thoroughly satisfy the mind of the court.

An instrument in writing which on its face is a guaranty of the collection of a certain bond and mortgage may, in a proper case, be reformed by a court of equity so as to become a guaranty of the payment of the bond and mortgage.

VAN BRUNT, P. J., dissenting.

APPEAL by the defendant, William H. Taylor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of June, 1894, upon the decision of the court rendered after a trial at the New York Special Term.

*Thomas G. Shearman*, for the appellant.

*George H. Pettit*, for the respondent.

PARKER, J. :

To justify the reformation of a written instrument it is well settled that the plaintiff is bound to establish :

1. The mutual agreement of all parties to the instrument, to the precise contract alleged to have been, in fact, the original agreement.

2. That the written instrument fails to express the common agreement, because of accident or of mutual mistake of all the parties, or by mistake on one side, induced by the fraud of the other.

And the burden rests upon the plaintiff to establish both of these propositions, not simply by a preponderance of evidence, but by proof so clear and convincing as to thoroughly satisfy the mind of the court. (*Southard* v. *Curley*, 134 N. Y. 148, and cases cited.)

The judgment under review decrees that an instrument in writing which on its face is a guaranty of collection of a certain bond and mortgage, should be so reformed as to guarantee its payment.

That such an instrument may be reformed by a court of equity, as well as deeds, mortgages and contracts generally, which have been repeatedly the subject of reformation, is supported by *Prior* v. *Williams* (3 Abb. Ct. App. Dec. 624).

The question then is, whether, applying the principles which should govern courts in decreeing that a contract be reformed to conform to the evidence adduced on the trial, the findings of the court at Special Term should be sustained ?

The direct testimony upon the question in issue was given by three witnesses, and how much their bearing, while on the witness stand, may have contributed towards satisfying the conscience of the court that the guaranty was not such as was agreed to, and that the change in the agreement was brought about through mutual mistake, or the mistake of one party and the fraud of the other, we cannot know. Our examination must be confined to the record.

The first inquiry should be, what was the agreement ? for it is not enough to prove that the plaintiff so understood the contract, and that the defendant knew he so understood. It must further appear that the defendant so agreed.

The plaintiff and the defendant Taylor had been personal friends for years prior to this transaction. Some measure of plaintiff's confidence in Taylor can be taken from the fact that after plaintiff had agreed to take the bond and mortgage and defendant's guaranty and

pay $10,000 therefor, the plaintiff gave him the amount in advance of the papers being ready for delivery. Indeed, they were not prepared and sent to him for nearly three months thereafter.

The plaintiff's testimony as to the agreement was as follows: " Mr. Taylor came to me and wanted me to invest in this Peyton Montgomery mortgage, which was $10,000 and bearing seven per cent interest, and I told him it was too large a risk for me to take; I did not care to invest so much money in one thing. He said it was perfectly good, and he considered it as good as a government bond, in his judgment. I said, if that was so, if he would guarantee the payment of it, I would give him one per cent, and I said I would be satisfied with six, and he said he would. He promised to do so."

John Simpkins, a brother of the plaintiff, testified that he had a conversation with Taylor after his brother had agreed to take the loan. They were playing billiards at the club when Taylor " told me what I already knew to be the fact, that my brother had agreed to take a $10,000 loan with a guaranty of the firm, and he stated that the firm had to charge the one per cent as a guaranty as a matter of business; that they could not make a guaranty, or it would not be business for them to make a guaranty, of any loan — payment of it — without taking one per cent for so doing.

" I replied to his statement that I thought my brother had been very foolish to have made a loan of $10,000 unless the payment of the principal and interest was guaranteed, because, having a family, I did not think he could afford to take the risk."

The other witness on this point was the defendant Taylor. He said: " I said nothing to Mr. Simpkins at the conversation which took place in May, 1886, or about that time, in regard to guaranteeing the payment of this bond and mortgage. I said that I would sell him the loan with a guaranty, and that, upon my return to Kansas, I would have the form of guaranty made up and sent on to him."

He does not say that he proposed to Simpkins that he would sell him the loan with only a guaranty of collection. According to his own version of it, there was no such limitation suggested. Nor does he say it was his intention to so restrict the guaranty. He contents himself with a denial that at the time there was anything said in regard to guaranteeing the payment of the bond and mortgage.

Now the court before whom the witness appeared finds the fact to be that he did so agree, and, in view of the testimony to which we have referred, this court should sustain the finding.

Immediately after the making of the agreement the plaintiff gave Taylor the $10,000, who, nearly three months later, sent to him the bond and mortgage, and with it a guaranty of collection signed by the defendants.

It was received by plaintiff's agent and retained by him with other papers of the plaintiff. The agent had authority to open plaintiff's letters, and did so in this instance, simply reporting the fact of their receipt by him to the plaintiff. Thus it happened that plaintiff's attention was not called to the form of the guaranty. Certainly discussion is not needful to make it appear that, so far as he was concerned, the fact that the written agreement was different from the real agreement of the parties was due to mistake.

That the execution of a different contract of guaranty than that agreed upon was due to fraud on Taylor's part seems equally apparent. He agreed to give a guaranty of payment if Simpkins would loan the money. He did not do it. An opportunity to perpetrate the fraud was presented, and he took advantage of it. He had Simpkins' money, who also had confidence in him, and was, at the time of its execution and delivery, at a seaside resort. So he prepared a guaranty, but one quite different from that which he had agreed to have executed by the firm and delivered. He must be presumed to have intended the necessary consequences of his act, which was to perpetrate a fraud on the plaintiff.

We do not concur in the view expressed by appellant's counsel, that, by reason of the long delay, the plaintiff should be held to have acquiesced in the guaranty delivered. The paper came into the hands of his agent, who did not call his attention to the peculiar form of the guaranty, and the circumstances were such that he never read the paper until he regarded it necessary to call in the loan. With reasonable promptitude thereafter he commenced this suit. *Albany City Savings Institution* v. *Burdick* (87 N. Y. 40–46) justifies the refusal of the trial court to dismiss the plaintiff's complaint on that ground.

An examination of the authorities cited by the appellant on this question will disclose that there were present in each case facts so

entirely different from the controlling facts in this one as to justify the assertion that they are not in point.

*Calhoun* v. *Millard* (121 N. Y. 69) was a suit in equity to compel the surrender and cancellation of certain town bonds. For many years, without protest or objection, taxes had been levied upon the property of the town to pay the interest annually accruing on the bonds, and it was applied to that purpose.

The court held the party guilty of unreasonable *laches.*

*Avery* v. *Equitable L. A. Society* (117 N. Y. 451) was a suit to reform a policy of life insurance after the tontine period of fifteen years had expired and the beneficiary had been tendered the cash value of the policy. The complaint offered no excuse whatever for the delay, and judgment was rendered on a demurrer to the complaint.

*Syms* v. *The Mayor* (105 N. Y. 153) had for its purpose the reformation of two leases, one executed in 1840 and the other in 1861. The court disposed of the case in this sentence: " But there was no proof of any mistake or fraud in their execution or in the terms inserted in them, and, therefore, even if the Statute of Limitations did not furnish a bar to the action to reform the leases there was no basis or ground for their reformation."

The law of the case was not further discussed.

The judgment should be affirmed, with costs.

FOLLETT, J., concurred.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusion arrived at by Mr. Justice PAR-KER in this case.

I do not think that the proof offered in this case was of so clear and convincing a character as to justify the reformation of the instrument in question.

It is attempted to establish the mutual mistake of the parties by the testimony of the plaintiff and his brother, the plaintiff testifying to the arrangement and his brother to an admission alleged to have been made subsequent to the date of the transaction in question. The defendant contradicts the testimony of the plaintiff pointedly, and refers to certain circumstances which tend to impair the credit to be given to that testimony. He shows that the guaranty was

sent to the plaintiff, and he testifies without contradiction that he asked the plaintiff some time thereafter whether he had received the papers and the plaintiff answered " Yes." The defendant then asked him : " Is the guaranty — is that form of guaranty all satisfactory ? " and the plaintiff said " Yes."

The plaintiff's brother testifies to a conversation had between himself and the defendant some time after the transaction in question, while they were playing billiards at the Union League Hotel, in which he says that the defendant told him what he already knew to be the fact, that his brother had agreed to take a $10,000 loan with a guaranty of the firm, and he stated that the firm had to charge the one per cent as a matter of business ; that they could not make a guaranty, or it would not be business for them to make a guaranty of any loan — payment of it — without taking one per cent for so doing. It appears certain from the evidence in this case that the words " payment of it " were an interpolation by the witness in the conversation and were not words used by the defendant. They do not fit anywhere into the conversation. The conversation was complete without them. But the witness had in mind the necessity, for his brother's success, that the words " payment of it " should be injected, and he was equal to the occasion. He says that the language used was that they would not make a guaranty ; that it would not be business for them to make a guaranty of any loan — and then he injects the words " payment of it " without taking one per cent for so doing. The very method in which the witness testified to this conversation shows that these words were not used, certainly that the defendant did not use them on any such occasion. This view is confirmed by the answer of the witness to the next question. He says : " I replied to his statement that I thought my brother had been very foolish to have made a loan of $10,000 unless the payment of the principal and interest was guaranteed, because having a family I did not think he could afford to take the risk." The language of the witness here seems to imply that he understood that his brother had made the loan without the guaranty of payment, because he speaks of his brother as having been very foolish in acting in the way in which he did, whereas if he had acted in the way the witness says he did he would not have been at all foolish in making the loan.

It seems to me that under these circumstances, the plaintiff having these papers under his control for a long period of time — it is true there is no evidence that he had looked at them — having acknowledged the correctness of the guaranty, his attention being called to it by correspondence, there is no such clear and distinct evidence of mutual mistake, or of mistake on one side and fraud on the other, as would justify the reformation of this contract.

The judgment should be reversed and a new trial had, with costs to the appellant to abide the event.

Judgment affirmed, with costs.