WILCOX v. AMERICAN TELEPHONE & TELEGRAPH CO. (Supreme Court, Appellate Division, Fourth Department. May 13, 1902.) Action by Sylvester Wilcox against the American Telephone & Telegraph Company. From a judgment entered on a directed verdict in favor of defendant, and from an order denying a new trial, plaintiff appeals. Affirmed. Jay K. Smith, for appellant. Elbridge L. Adams, for respondent.

PER CURIAM. Judgment affirmed.

SPRING, J. (dissenting). This action is ejectment to compel the defendant to remove its poles from the plaintiff's land, which extends to the center of the highway along which the poles were placed in 1886 and have since remained. The respondent as a defense introduced a written agreement, executed by the appellant in 1897, whereby she granted to it "the right to construct, operate, and maintain its lines over and along the property which I own, or in which I have any interest, in the town of Mendon, county of Monroe, and state of New York, including the necessary poles and fixtures along the roads, streets, or highways adjoining the property owned by me in said town; said sums received in full payment for such right, and in full satisfaction for the trimming of any trees along said lines necessary to keep the wires cleared at least 18 inches, and with the right to set the necessary guy and brace poles, and attach to trees the necessary guy wires." The plaintiff contends that this agreement was procured from him fraudulently, and he testified that a man came to him to sign the paper, and he describes the occurrence in this way: "He said they had been trimming a tree, and he wanted to pay me for it. I said I did not know nothing about it at all. He threw a dollar down on the desk, and said, 'I think that will be about right.' He said, 'I want a receipt to show that I paid you a dollar.' I said, 'All right.' I signed the receipt. I never read it. He paid me a dollar. All he wanted was something to show it. Not a word was said about poles; not a word about a right of way. I knew there was only one tree there, and I told him there was only one apple tree. He threw the dollar on the counter, and said he thought that was right. He said, 'I want a receipt for the dollar.' I hadn't got my specks, and I took and signed my name to it. I never read the inside a particle. I signed my name where he pointed out. John Dann sat there talking with me at the time. He is not living. In signing that I relied upon the statement that it was simply a receipt for a dollar for trimming the tree. * * * Q. Did you say anything to him as to whether you had your glasses? A. I said I hadn't my glasses. He said, 'Sign the receipt;' that it was nothing but a receipt. Q. Could you read that fine print? A. I couldn't without my glasses." The agent of the defendant who induced the signing contradicted the plaintiff, and testified that the agreement was either read by the plaintiff or to him by the witness. These were the only two witnesses, and for the purposes of this appeal we must accept the narration of the plaintiff. On that hypothesis I think the jury might have found that by reason of the fraud of defendant's agent and the mistake of the plaintiff the instrument did not express the intent of the parties. In Institution v. Burdick, 87 N. Y. 40, the action was to foreclose a mortgage and to hold the defendant Mrs. Burdick for any deficiency arising on the sale, based on the assumption clause in a conveyance to her. She answered, alleging that the clause was fraudulently inserted in the deed by her grantor without her knowledge, and sought to prove these facts upon the trial; but the proof was excluded. Upon appeal to the general term the judgment was affirmed, on the ground that her omission to examine the deed was negligence which deprived her of the right to attack it for the fraud alleged. The court of appeals reversed this decision, holding that the failure "to read or know the contents of a written instrument" is no bar to the reformation of such instrument by reason of mistake or fraud; and further: "It is the general rule that, where a written instrument fails to conform to the agreement between the parties, in consequence of the mutual mistake of the parties, however induced, or the mistake of one party and fraud of the other, a court will reform the instrument, so as to make it conform to the actual agreement between the parties." The court cites and analyzes two cases, notably Welles v. Yates, 44 N. Y. 525, in support of its position. Of like effect are Smith v. Smith, 134 N. Y. 62, 31 N. E. 258, 30 Am. St. Rep. 617; Simpkins v. Taylor, 81 Hun, 467, 31 N. Y. Supp. 169; Curtis v. Albee, 167 N. Y. 360, 60 N. E. 660. The omission to read the contract, where no fraud is imputable, is fatal to an endeavor to reform it, unless both parties to it concede that it does not correctly state their agreement. The rule, however, seems to be settled by authority that if a person signs an agreement upon a fraudulent state-

ment as to its contents of the one to be benefited by the signature, and upon a mistaken belief as to what it contains and in reliance upon the said representation, the failure to read the contract does not inhibit its reformation at the instance of the one defrauded. In this case the plaintiff's testimony is that he believed and was informed by the defendant's agent that the paper signed was to cover the damages from cutting an apple tree which interfered with the defendant's wires; that he did not expect he was granting to defendant the right to construct and maintain its lines anywhere upon his farm it might elect, regardless of the damages flowing from such invasion; that he did not have his glasses with him, and consequently was unable to read the paper which he signed, and relied upon the statement made to him by the agent of the defendant as to what the paper contained. The fact that he did not read the paper may be a potential circumstance in impairing his credibility; but we think, as the case is now presented, the testimony is sufficient to bring the case within the rule to which we have adverted, and is made a question of fact for a jury to determine. Nor can we assent to the doctrine, invoked on behalf of the defendant, that the long acquiescence in the location of the poles estops the plaintiff from maintaining this action. Both parties were apparently long quiescent. The defendant for some reason in 1897, according to its position, endeavored to acquire a right to maintain its lines across the lands of the plaintiff, presumably because none then existed. That endeavor was shortly followed by this agreement. The decision of the court of appeals in 1894 in Eels v. Telephone & Telegraph Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640, also an action of ejectment, deciding that the erection of poles in a country highway without the consent of the owner of the fee was an unlawful appropriation of the highway, and not within the public easement, and ejectment for their removal would lie, may have spurred both parties to action. However that may be, the plaintiff has not rested so long upon his rights that he can be held to be estopped from recovering whatever damages he may have sustained, unless the contract in evidence cuts him off. The poles were originally placed without his knowledge, and it is not, therefore, a case of the owner permitting them to be placed and the expense to be incurred without objection. The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HISCOCK, J., concurs.