### DISBROW v. DISBROW et al.

(Supreme Court, Special Term, Westchester County. January, 1914.)

1. WILLS (§ 734*)—LEGACIES—INTEREST.
   A legacy to plaintiff, which was not payable until the death of testator's widow, did not carry interest until that time.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1847–1872; Dec. Dig. § 734.*]

2. REFORMATION OF INSTRUMENTS (§ 45*) — ACTIONS — SUFFICIENCY OF EVIDENCE.
   In an action to reform a trust deed, conveying property in trust to pay plaintiff a certain sum upon the sale of the premises, evidence *held* not to show that a provision for the payment of interest to plaintiff upon such sum was omitted by fraud or mutual mistake.
   [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

3. REFORMATION OF INSTRUMENTS (§ 45*)—PROOF.
   To authorize the reformation of a written instrument it must appear, by clear and convincing evidence, that the mutual agreement, claimed to have been made, was in fact made, and that the instrument fails to express such agreement, either by mutual mistake or by mistake of one party induced by the fraud of the other.
   [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

Action by Griffin V. Disbrow against George A. Disbrow and others. Judgment dismissing the complaint.

Humphrey J. Lynch, of White Plains, for plaintiff.
Leslie J. Tompkins, of New York City, for defendants.

TOMPKINS, J. This action is brought to reform a trust deed of premises in New York City, made by Robert N. Disbrow and Clara R. Disbrow, his wife, and Griffin B. Disbrow, and George A. Disbrow, on November 1, 1893. The premises were owned by Benjamin G. Disbrow, who died in 1892, leaving a widow and four sons, Griffin

B., George A., Robert N., and Charles A. Just before his death Benjamin G. Disbrow conveyed said premises to one of his sons, Robert N. Disbrow, and after his death controversies arose between the widow and the children, it being claimed, among other things, that Robert N. Disbrow had procured the conveyance to him by his father of said premises by means of undue influence; and at the same time, a claim was asserted by Griffin B. Disbrow against the estate for moneys claimed to have been loaned to his father, which claims were represented by promissory notes held by him aggregating over $4,000. Benjamin G. Disbrow had executed three or four last wills and testaments, one of which was probated, by which the decedent devised said real estate to his widow and children, leaving to the widow the income for life, and providing that upon her death it should be divided into four equal parts; and by said last will and testament, the plaintiff, Griffin B. Disbrow, was given a legacy of $1,500, and his brother Charles A. a legacy of $500; neither, however, was to become payable until the death of the widow. All of the disputes and controversies between the parties finally culminated in a compromise, and the making of the trust deed in question, which provided that the grantees, Griffin B. Disbrow and George A. Disbrow, were—

"to have and to hold the above granted premises unto the said parties of the second part and their successors forever, in trust nevertheless, and to and for the uses, purposes and interests hereinafter limited, described and declared, that is to say: upon trust to lease the said premises, to receive and collect the rents, issues and profits, and after paying all taxes, assessments, interests on encumbrances, insurance, repairs and other expenses incidental to the care and management of said premises, to apply the net income thereof to the use of Sarah M. Disbrow, the widow of Benjamin G. Disbrow, late of the City of New York, deceased, for and during the term of her natural life, and at and after the death of said Sarah M. Disbrow, to sell the said premises at private sale or at public auction, and out of the proceeds to pay the said Griffin B. Disbrow the sum of $7,148.37, and to pay to Charles A. Disbrow, of Harrisburgh, in the state of Pennsylvania, the sum of $500, and to divide the balance remaining into four equal parts, and to pay one of such parts to the said Griffin B. Disbrow, or his legal representative, one of such parts to the said George A. Disbrow, or his legal representatives, one of such parts to the said Charles A. Disbrow, or his legal representatives, and one of such parts to the said Robert N. Disbrow, or his legal representatives."

The widow lived until 1912, and during her lifetime the net income of said premises, which amounted to about $600 a year, was paid to her, and was practically her only means of support.

The plaintiff now seeks to reform the said trust deed by inserting therein the provision for the payment to him of interest at the rate of 5 per cent. per annum, upon his claim of $7,148.37, from the date of the execution of said trust deed, his claim being that provision for interest was omitted from said trust deed by mistake, and by fraud and deceit on the part of his brothers, and he further claims that on several occasions, after the execution of the trust deed, and before his mother's death, he demanded interest upon his said claim, of his brothers George A., and Charles A., and that they said, in substance, that there was not income enough to pay such interest, and that he would have to wait until their mother's death. The trust deed was prepared by Charles H. Shaw, Esq., attorney for Robert N., and

Charles A. He had several conferences with Jacob F. Miller, Esq., who acted as attorney for the plaintiff, and they, with the plaintiff, George, and the mother, "went over it very carefully and made some changes," and the changes suggested by the plaintiff's counsel, Mr. Miller, were adopted and inserted in the trust deed before it was executed. Respecting the plaintiff's claim against the estate at that time, Mr. Shaw testified:

"The interest was computed and added to the sum he was ultimately to receive under the terms of the trust deed."

There was nothing in the preparation and execution of the trust deed to show or suggest fraud, deceit, or artfulness. On the contrary, it seems to have been the careful and deliberate act of all parties concerned in the consummation of the settlement that they had willingly agreed upon of all controversies that had arisen among them.

The items that made up the plaintiff's claim against the estate, the aggregate of which was the sum of $7,148.37, were as follows: Four promissory notes, $4,450.86; interest on these notes from their respective dates to the date of the trust deed, at 5 per cent. per annum, $697.51; the legacy given by the will of Benjamin G. Disbrow, $1,500; balance due from grandfather's estate, $500—total, $7,148.37. The claim of the defendants that, at the time of the settlement and execution of the trust deed the plaintiff agreed to waive interest thereafter on said sum of $7,148.37 is borne out by the circumstances and probabilities of the case. In the first place, if that amount was to bear interest, it would have been expressly stated in the trust deed, which was prepared, revised, and executed with the advice and under the immediate direction of the plaintiff's very capable lawyer. It is inconceivable that such an important item as future interest on the amount of the plaintiff's claim would have been omitted from the deed, if it had been understood that he was to have it.

Besides, it is improbable that the other parties of the settlement would have agreed to pay the plaintiff interest upon the interest that had already accrued upon said promissory notes and was included in his claim, or interest upon the legacy of $1,500, which, under the terms of the will of his father, the plaintiff was not entitled to receive until his mother's death, and therefore, of course, would not draw interest, until that time.

[1] Further, it seems hardly likely that the parties agreed to pay the plaintiff interest on the amount of his entire claim, which would have amounted to about, or more than, one-half of the net income of the property, which, under the trust deed, was to go to the widow for her support. The use of the word "interests" was the mistake of the typewriter, so Mr. Shaw, the draftsman of the trust deed, testified. In any event the connection in which the word is used indicates to me that it had reference only to the mortgage on the premises. The plaintiff's claim is not an incumbrance on the premises; his legacy may have been, but that was not payable until the widow's death, and hence did not carry interest. The notes had not been put

146 N.Y.S.—5

in judgment; therefore were not liens or incumbrances upon the premises.

[2] I have carefully read all the testimony and examined the exhibits and considered all the circumstances to which my attention has been called, on the part of the plaintiff, and upon the whole case I am satisfied that the trust deed accurately states the exact agreement that was made by the parties in November, 1893, and that there was no mutual mistake or any fraud or deceit on the part of the defendants, or either of them.

[3] To justify the reformation of a written instrument, it must appear, by clear and convincing proof, that the mutual agreement alleged to have been made was in fact made, and that the written instrument fails to express that agreement, either because of a mutual mistake of all the parties, or by reason of a mistake on one side, induced by fraud on the other. Southard v. Curley, 134 N. Y. 148, 31 N. E. 330, 16 L. R. A. 561, 30 Am. St. Rep. 642; Simpkins v. Taylor, 81 Hun, 467, 31 N. Y. Supp. 169. Such clear and convincing proof has not been furnished by the plaintiff; on the contrary, the testimony on the part of the defendants, supported by the circumstances and probabilities, furnish a fair preponderance of evidence against the plaintiff's contention.

Judgment for the defendants upon the merits, dismissing the complaint, with costs.