Hyatt v. Pugsley.

| 33 | 373 |
| 134a | 317 |

---

# ABRAM HYATT and others *vs.* JAMES PUGSLEY and others.

The rule of descent, contained in the 10th section of our statute of descents, (1 *R. S.* 752,) prescribing the manner in which an estate shall descend, where it has come to the intestate "on the part of his father," is not founded on feudal principles, nor does it proceed by analogy to feudal rules.

Where O. P., while seised of land which he had inherited from his brother, I. L. P., died intestate, leaving no ancestor living, nor any descendant, brother or sister, or descendant of a brother or sister; *Held* that the estate was not to be traced back of I. L. P., who was the sole stock of descent; and that it was immaterial from whom he acquired the estate which O. P. inherited from him.

That the children of the brothers and sisters of T. P., the father of I. L. P., and of the brothers and sisters of his mother, were equally near in blood and kin to I. L. P., and were all entitled to inherit, in equal parts, the lands which descended from I. L. P. to his brother, O. P.

And that the case was not within the 10th section of the statute of descents, and the land did not go to the descendants of the brothers and sisters of T. P., the *father*, to the exclusion of the relatives of the *mother* of the intestate.

THIS was an action for partition of a farm situate in the town of Westchester. Being at issue on the complaint and answers, it was referred to J. W. Tompkins, Esq. as referee, to report upon the facts set up in the pleadings. Among other things, he found and reported that the premises were originally purchased by Talman Pugsley, who died seised thereof, intestate, leaving two children, Isaac L. and Oakley Pugsley, his only heirs at law; that thereafter Isaac L. Pugsley died intestate, leaving his brother Oakley his only heir at law, and said Oakley then became the entire owner of the premises; that in May, 1853, Oakley Pugsley died seised of the premises, having previously made his will, dated February 5, 1848; that by reason of the death of two of the devisees in the will, two-thirds of the premises remained undisposed of and went to the heirs at law; and the referee in his report decided that the portion of the premises undisposed of by the will went to the children and descendants of the brothers and sisters of Talman Pugsley, the original purchaser of the premises, in exclusion of the descendants of the brothers and sisters of Oakley Pugsley's *mother*, the wife of said Talman. Upon the hearing of this cause at special term upon the referee's report, Justice STRONG reversed the finding of the referee so far as he held that that portion of the premises undisposed of by the will went "to the descendants of the brothers and sisters of said Oakley Pugley's said *father* to the exclusion of the descendants of the brothers and sisters of said Oakley Pugley's deceased *mother*, as said Oakley Pugley's heirs at law." And he held "that the one-third part of the farm in question, being the half of what did not pass under the will, descended to both the paternal and maternal collateral relatives of the testator. The heirs at law on the part of the father appealed from that portion of the order made at the special term.

*M. L. Cobb*, for the appellants.

*W. N. Dyckman* and *H. Hagner*, for the respondents.

*By the Court,* EMOTT, J. The share of the lands described in the complaint, to which the present question relates, came to Oakley Pugsley as heir at law of his brother Isaac L. Pugsley, who died intestate. Isaac L. Pugsley inherited from his father Talman Pugsley. The manner in which the latter acquired title does not appear. Oakley Pugsley was the person last seised, and under whom all the parties to the present suit claim. He died intestate as to this share or part of his lands, being one-third, and all which it is necessary to notice for the purpose of the present appeal. Oakley Pugsley died in 1853, leaving no ancestor living nor any descendant, brother or sister, or descendant of a brother or sister. His heirs at law, therefore, were his collateral relatives, the descendants of brothers and sisters of Talman Pugsley his father, and of brothers and sisters of his mother. The plaintiffs are descendants of brothers and sisters of Oakley Pugley's father, or purchasers from them. They claim that this inheritance came to Oakley Pugsley "on the part of his father," because his father was originally seised of the land, and it descended from him to Isaac L. Pugsley his son, from whom it came to Oakley Pugsley. They therefore insist that the case comes under § 10 of the statute of descents, (1 *R. S.* 752,) and that the share of the lands in question must go to the descendants of the brothers and sisters of Talman Pugsley the father, to the exclusion of the relatives of the mother of the intestate.

It may be conceded that this would be the rule of the English law, notwithstanding that it is also well settled by that law that the descent from brother to brother is immediate, and not traced back through the father, and so not interrupted by alienage or other disability on the part of the latter. (*Collingwood* v. *Pace,* 1 *Ventr.* 413. 7 *Wend.* 333.) But the canon of the English law of descents, which regulates such a case, is not the same as the rule of our statute. The rule of the English law requires that the collateral relative, who is to inherit in default of lineal descendants of the

person last seised, shall be " of the blood of the first pur-chaser." (3 *Cruise's Digest,* 334, 335. 2 *Black. Com.* 221.) This is a relic of the feudal system by which no one could succeed to a feud but those who were of kin to the first acquirer of it. The effect of the rule has been restricted by statutes extending the meaning of the word purchaser ; (*see Stat.* 3 *and* 4, *Will.* 4*th, ch.* 106 ;) but it is still necessary to go back in the history of the title until you arrive at some one who acquired the estate otherwise than by descent, al-though the person last seised is presumed to have been a pur-chaser, unless he is shown to have inherited. It is obvious that no reasons for such a rule exist among us, and that it is not in harmony with our institutions or policy. We do not therefore find in our statutes of descents any reference to "the blood of the first purchaser," as a qualification to inher-it, in such cases. Instead of this we have the rule that the estate is to go to the kindred of the parent or other relative, from whom or on the part of whom it came to the intestate. The difference between the two rules of descent, and the reasons for the difference, are very forcibly stated and illus-trated by Judge Story in a case arising under the Rhode Isl-and statute of descents. (*Gardner* v. *Collins,* 2 *Peters,* 58.) The language of that statute was in substance that when the inheritance came to the intestate " from the parent" &c. then it should go to the kindred of such parent exclusively. The counsel for the plaintiff insists that the phraseology employed in the statute of this state makes a total difference in the cases. His argument is that inasmuch as the estate is limited in its descent, when it has come " on the part of the father," and not merely when it has come " from the father," we are required to trace the title back, and ascertain in effect the original purchaser in whose hands the estate was *feudum novum.* I apprehend, however, that a little consideration will show that such was not the meaning of the statute, or the reason of the introduction of the words " on the part of." The rule of the statute is not founded upon feudal principles,

nor does it proceed by analogy to feudal rules. The definition given in section 29 (1 *R. S.* 755) of the words "on the part of the father or mother," as the case may be, includes some cases in which the intestate would be regarded by the English law as a purchaser ; as where he took from the father or mother by gift or devise, and on the other hand some cases which the language employed in the statute of Rhode Island might not include, as where the inheritance came to the intestate by a descent traced through his father, although he were not living, and thus were only a link in the chain of descent. The object, evidently, was not to introduce the common law rule of tracing the estate to the first purchaser, but to regard only the immediate source and descent of title to the propositus or person last seised, and at the same time to continue the estate in the family of the father or the mother of such person, if it came to him from any one exclusively of the blood and kin of either. There is nothing in the language employed in the statute of this state, more than in that which was considered by Judge Story, to lead to the conclusion that any other than the immediate descent and the immediate ancestor of the person last seised are intended. In the present case we are not at liberty to trace the estate back of Isaac L. Pugsley. He is the sole stock of descent, and it is immaterial from whom he acquired the estate which his brother inherited from him. As the children of the brothers and sisters of his father and of his mother were equally near in blood and kin to him, they will inherit alike the share of these lands which descended from him to his brother.

The judge at special term decided correctly in establishing this rule of distribution, but the order which was entered upon his decision varies from it and from the express direction of the statute in an essential particular. The statute (1 *R. S.* 751, § 7) provides that where the descent is to collateral relatives, all of equal degree of consanguinity to the intestate, the inheritance shall descend to them in equal parts. The judge at special term expressly announced this

rule, but the parties disregarded his direction, by inserting in the order that the descendants of the children of the brothers and sisters both of the father and mother of Oakley Pugsley should take the share the parent would have taken if living. The order must be modified in this particular, and neither party will have costs of this appeal.

[KINGS GENERAL TERM, February 11, 1861. *Lott, Emott* and *Brown,* Justices.]