ROBERT J. SMITH et al., Respondents. *v.* MARGARET SMITH, Appellant.

Inexcusable negligence may not be imputed because of an omission of vigilance and care, which is procured by the fraud of another.

In an action to have a deed executed by plaintiffs to defendant, their aunt, set aside as fraudulent, it appeared and the trial court found in substance that the parties were tenants in common of the premises; that for a number of years prior to the execution of the deed defendant had taken charge of the premises and collected the rent; she had provided for one of the plaintiffs and a sister when minors, and plaintiffs confided in her affection and care for their welfare; that defendant and her attorney, known to and respected by plaintiffs, presented the deed to them for execution, falsely representing that it was simply an instrument empowering defendant to collect the rents, and thereby, and in reliance thereon, plaintiffs were induced to execute the deed without reading it, no consideration being paid. *Held*, that plaintiff's right to equitable relief was not defeated by their omission to read the deed; and that they were entitled to the relief sought.

(Argued April 28, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made November 29, 1890, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to have adjudged void a conveyance of real estate made and delivered by the plaintiffs to the defendant and the cancellation thereof directed, and that plaintiffs and one Mary Ann Smith Madden be decreed to be seized of the land described therein.

The facts, so far as material, are stated in the opinion.

*Edward W. S. Johnston* for appellant.

*Horace Graves* for respondents.

LANDON, J.   April 24, 1880, the plaintiffs, together with their sister Mary, executed and delivered to the defendant, their aunt, Margaret Smith, a deed of bargain and sale of the premises described in the complaint for the unpaid nominal consideration of one dollar.

The plaintiffs and their sister Mary Ann Smith Madden were the sole heirs of their mother Hannah Smith, who died in 1876 intestate.   Hannah Smith and the defendant were sisters, and with their brother Anthony, said to be an alien and residing in Ireland (but whose rights are not here involved), were the sole heirs of their sister Ann McCool, who died in the city of Brooklyn in 1875 intestate, seized as owner in fee of the premises in question.

Thus at the date of the conveyance the plaintiffs were tenants in common with the defendant and with their sister, and possibly with their uncle Anthony, of the premises.

The trial court found " that on or about the 24th day of April, 1880, the defendant and one Tilton, an attorney at law, at the request of the defendant, presented to the plaintiffs and said Mary Ann Smith Madden (their sister), for signature and execution, a deed of bargain and sale conveying said real property to the defendant.   That on the presentation of said

deed to the plaintiffs the said defendant and the said Tilton knowingly and falsely represented to the plaintiffs that the said deed was an instrument which gave the defendant only the power to collect the rents of said property, and by said representation, to said Tilton and defendant known to be false, induced said plaintiffs to sign said instrument without reading it."

"That plaintiffs signed and executed said deed without reading it, relying on the representations of said Tilton and defendant Smith, and believing it as represented as aforesaid to be only a power of attorney to collect rents, and relying on the professional knowledge of said Tilton and the affection and good will of the defendant as their aunt, and that the defendant and said Tilton conspired to deceive the plaintiffs and fraudulently to induce them to sign and execute said deed to defraud the plaintiffs of their title to and interest in said property as heirs at law of their mother, Hannah Smith."

The appellant excepts to these findings as without support in the evidence and contrary to the evidence. The exceptions are not well taken. The representations as found were distinctly testified to by the plaintiffs.

It appears that upon the death of the plaintiffs' mother in 1876 the defendant took sole charge of the premises and collected the rents. Plaintiffs' father had long been dead, and the defendant, their aunt, who had no children of her own, took the plaintiff Robert and his sister Mary, both then minors, to her home and provided for them. Defendant's husband afterwards furnished Robert employment. The plaintiff Thomas provided for himself and lived apart.

Although the trial court found that the defendant did not stand *in loco parentis* to the plaintiffs, the court could collect from the evidence that the plaintiffs were grateful for the motherly offices she had rendered them, and for her care for their welfare, and that they confided in her affection for them At the time of the execution of the deed Robert was twenty-three years of age and Thomas twenty-seven. Just what their rights were in the premises they did not know, but as

their aunt had no children, it is not difficult to believe the testimony of one of the plaintiffs that he supposed "there might be something when the old folks died."

The plaintiffs knew and respected the attorney who accompanied the defendant. Under such circumstances the testimony of the plaintiffs, that they did not distrust their aunt and were willing to comply with the request they understood her to make, is credible. That she should have the legal power to collect the rents seems reasonable; but that they should give their interest in this property to their aunt, or that she should ask them to do so, seems not to have occurred to their minds. True they were able to read, and might have read, the instrument if they had wished to do so. They had intelligence enough to understand the effect of the deed if they had read it, but the circumstances under which they were approached, and the representations made, and their relations to their aunt and confidence in her, put them off their guard; if indeed it could have occurred to them to be on their guard against her. They were thus prevented from reading the instrument.

The learned counsel for the defendant cites numerous cases, mostly from other states, to support his contention that plaintiffs' negligence in not reading the deed defeats their appeal to equity to relieve them from it. The law of this state, as stated in *Albany City Savings Instn.* v. *Burdick* (87 N. Y. 40), is not so harsh as in some of the cases cited.

It does not, in cases like this, impute inexcusable negligence to that omission of vigilance and care which is procured by the fraud of the wrongdoer.

Negligence is not an apt term to define the plaintiffs' share in the transaction. The plaintiffs' action or omission was the natural result of their relations with the defendant, the impulse of their affection and confidence. They were prompt to confer the favor the words of their aunt seemed to solicit. Her request excited no suspicion, and they entertained none. What she asked they thought was right because it was she that asked it, and because she was supported by the attorney

whom they respected, and whose presence and participation were the assurance that it was legally right.

In the case cited the defendant was sought to be charged with the deficiency in foreclosure because of a clause in her deed from the mortgagor reciting the mortgage, and that she assumed it and agreed to pay it. She alleged and offered to prove that she had not assumed or agreed to pay it, and that her grantor, to whom she entrusted the preparation of the deed, had fraudulently procured the clause to be inserted, and that she accepted the deed without knowledge of the existence of the clause. The General Term held that her failure to examine the deed and know its contents was such negligence as defeated her prayer for relief against the covenant, but this court reversed the judgment. The court said the defendant " was not bound to assume that he (the grantor) was practicing a fraud upon her or representing a falsehood, and she cannot be charged with negligence in believing confidently that he was acting in good faith and telling the truth."

In that case the grantee was dealing at arms length with the grantor without any peculiar circumstances tending to lull vigilance or care, such as fortify this case.

The defendant excepted to several refusals of the court to find as requested. Some of the propositions of fact requested were established by uncontradicted evidence. But a careful examination leads to the conclusion that these facts were not pertinent to any of the issues, and, if found as requested, could not properly affect the result.

There was no reversible error in the refusal.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.