FRANK B. KNOWLTON, Appellant, *v.* THOMAS J. ATKINS, Respondent.

A. conveyed to defendant certain lands ·by deed absolute in terms. A. died leaving a widow and two minor children; after his death defendant executed a declaration of trust, stating that the conveyance was made to him in trust to sell the lands and collect the rents, etc., for the benefit of the widow and children of the grantor, the widow to receive one-third the net income and proceeds of sale during life, the remaining two-thirds to be used for the support and education of the children during minority, or for the use of the survivor in case of the death of either without issue before his majority, the trust to terminate when the younger of the children or the survivor became of age; the property unsold then to be conveyed to the children as joint tenants, subject to the widow's dower right, and the proceeds of sales and unexpended income to be equally divided between them after first paying to the widow the value of her interest. In case of the death of both children without issue before the age of maturity, the property and trust fund then to be conveyed and paid over to her. The widow died, and thereafter both of the children died during minority, both on the same day, but one surviving the other. The immediate relatives left were defendant, brother of A., and plaintiff, brother of his widow. In an action to determine their rights in the trust property, *held*, that the deed and the declaration of trust were to be considered as one instrument; that, under it, the children took a vested future estate, defeasible by death, during minority; that the limitation over to the widow created in her an estate in expectancy, limited upon the contingencies of the death of both children in infancy, and defeasible by her death before that of her children; that, therefore, it was defeated by such death, and assuming that thereupon the estate of the children became indefeasible, one-half descended first to the survivor, and from and through him the whole of it to the parties to this action in the proportion of three-fourths to the defendant and one-fourth to plaintiff.

The issues in the case were by stipulation referred to a referee. The decision on trial was in favor of plaintiff; defendant sought to review

the determination by appeal to the General Term from the interlocutory judgment, and by motion for a new trial. The General Term reversed said judgment and granted a new trial at Special Term. *Held,* that while the appeal was unauthorized, the motion was proper (Code Civ. Pro. § 1001), and a new trial was properly granted thereon; that this necessarily set aside the judgment, and the effect is the same as a reversal; and this order having been sustained, that judgment absolute against plaintiff was the necessary result.

*It seems,* plaintiff might have obtained relief by motion from the direction for a new trial at Circuit, and had another referee appointed.

Reported below, 56 Hun, 408.

(Argued June 1, 1892; decided October 1, 1892.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made May 12, 1890, which reversed an interlocutory judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

The action was brought to obtain conveyance of certain lands and an accounting for the proceeds of certain other lands sold by the defendant, all the subject of a trust arising out of the conveyance made by one Osmin W. Atkins, in which his wife joined, to the defendant.

This conveyance was made by deed absolute in terms, and covered lands in the county of Kings. The grantor died in September, 1871, and afterwards, September 17, 1872, the defendant executed, under his hand and seal, a declaration of trust by which, after referring to the deed and giving a description of the lands, it was recited that the conveyance was made to enable him to sell and dispose of the lands for the benefit of the widow and children of the grantor in case of his decease, and that he had since deceased, leaving a widow, Cordelia Atkins, and two minor children, Albert S. and Osmin M. Atkins. Then followed his declaration that he had taken and then held the property in trust only, and for the use and purposes:

*First.* To sell, convey and dispose of the property as in his judgment should be for the best interest of the widow and children.

*Second.* To collect the rents, issues and profits of the property, hold them and the proceeds of sales in trust for the use

and benefit of the widow and the two children, or the survivor of them, the widow to receive from the net income and proceeds of sale one-third thereof, payable to her semi-annually during her life, the remaining two-thirds to be invested for the use and benefit of the two children during their respective minorities, or for the use and benefit of the survivor of them in case of the death of either of them before his majority without issue. But out of the two-thirds the widow should receive sums reasonable for the support and education of the two children.

*Third.* To terminate the trust at his option with the consent in writing of the widow, and thereupon convey the lands remaining unsold (subject to the life use of the widow in one-third) to the children or to the survivor of them, or his heirs, in case the deceased left no issue, and make a like disposition of the income and proceeds of sales in his lands, except that the then value of the interest of the widow in them be paid to her, and if in his and her judgment it is best to do so, to also pay her the then value of her interest in the property remaining unsold.

"*Fourth.* This trust is to terminate, if not previously terminated as above provided, when the younger of said children, or the survivor of them, shall attain the age of twenty-one years, at which time I am to convey to them as joint tenants in equal proportions, share and share alike, all of said property unsold, subject to the dower rights of said Cordelia, and to divide and pay over to each of them his equal share of all income and proceeds of sales then in my hands after deducting all lawful charges and expenses, and first paying to said Cordelia the then present value of her interest therein.

"*Fifth.* In case of the death of both of said children before the age of maturity, then I am to convey all and every part of said property then remaining unsold, and to pay over all income and proceeds of sales in my hands (deducting charges and expenses) to said Cordelia for her sole use and benefit forever."

*Sixth.* In case of his death before the maturity of the chil-

dren, or the survivor of them, the widow Cordelia is to suc-
ceed to the trust.

*Seventh.* In case of the death of Albert S. and Osmin M.
Atkins or either of them in minority "leaving lawful issue,
the children so left shall take the share of their parent or
parents respectively *per stirpes* and not *per capita.*"

The widow Cordelia died in November, 1873. In Decem-
ber, 1881, both of the children died on the same day at the
ages of twelve and ten years. And although their death was
caused by drowning on the same occasion, the referee found
that the elder one, Albert S. Atkins, survived Osmin M.
Atkins, the younger. Their only immediate relatives were
the defendant, the brother of their father, and the plaintiff,
the brother of their mother. The referee determined that
the plaintiff was entitled to three-fourths of the trust estate;
and that the defendant should convey and account to him
accordingly. Thereupon, with a view to his accounting for
the income and proceeds of sales, an interlocutory judgment
was entered.

*James B. Ludlow* for appellant.

*W. W. MacFarland* for respondent.

BRADLEY, J.  The controversy has relation to the inherit-
ance of the property in question. The declaration of trust is
presumed to express the purpose of the conveyance by Osmin
W. Atkins and Cordelia, his wife, to the defendant, and both
may be treated as if embraced in a single instrument. The
plaintiff claims title by descent from the children Albert S.
and Osmin M. Atkins, through their mother, who was his
sister; and the defendant asserts his claim to the title by
descent on the termination of the trust from his brother. The
brother having the title was the creator of the trust, and if as
the defendant contends the estate then reverted to his heirs,
he, as such heir, took it. The plaintiff, on the contrary,
insists that the widow Cordelia had by the trust an estate in

expectancy in the property, which on her death descended to her two children; and that on their death in minority the estate became absolute and vested in their heirs. And because it came to them in that event on the part of their mother, it descended to their maternal uncle, except as to one-half which came to Albert by descent from his brother Osmin M., whom he survived; and as to that half both the defendant and plaintiff as his paternal and maternal uncles took and shared equally. This would be so upon the assumption that such was the stock of descent, since for the purpose of determining who in that manner take under our statute, reference is had to the immediate source of descent, and not to the blood of him in whom was the earlier inheritable title. (1 R. S. 752, §§ 10, 13; *Hyatt* v. *Pugsley*, 33 Barb. 373.) The main inquiry here is whether or not the widow Cordelia had in the property an estate which descended on her death to her children. Her alleged estate was the product of the grant made by Osmin W. Atkins to the defendant for the declared purpose of the trust. And the fact that this was an express trust, and, therefore, vested the whole estate in the trustee subject to the execution of the trust (1 R. S. 729, § 60), did not prevent Cordelia and the children taking through the same grant so made vested future estates in the property, although they were held until its termination subject to the execution of the trust. (Id. § 61; *Embury* v. *Sheldon*, 68 N. Y. 227, 234; *Goebel* v. *Wolf*, 113 id. 405; *Van Axte* v. *Fisher*, 117 id. 401; *In re Tienken*, 131 id. 391.) Upon this proposition in the present case, *Townshend* v. *Frommer* (125 N. Y. 446) has no necessary application. The future estates which there were the subject of consideration were treated as contingent.

In the case at bar those children, through the instruments creating the trust, acquired a future estate. And it was defeasible, as appears by the fifth article of such declaration, which provides that "in case of the death of both of said children before the age of maturity, then I am to convey all and every part of said property then remaining unsold, and to pay over all proceeds of sale in my hands (deducting charges and

expenses) to said Cordelia, for her sole use and benefit for-
ever." The trust was terminated by the death of those chil-
dren. They died in minority. The estate so acquired by them
was not contingent, but a vested estate, defeasible only by con-
dition subsequent, and may be designated as a determinable
fee. And the limitation over to Cordelia created in her an
estate in expectancy, limited upon the contingency of death of
the children within the age of minority. This was also a
limitation to her in fee to become absolute only upon the speci-
fied contingency. The doctrine of the common law upon the
subject has been somewhat simplified by the statute in the
removal of distinction between contingent remainders and
executory devises; thus treating them alike as future or expect-
ant estates, and subject to the same provisions. As defined by
the statute, estates in expectancy embrace future estates and
reversions; and a future estate is vested when there is a per-
son in being who would have an immediate right to the pos-
session upon the ceasing of the intermediate or precedent
estate. (1 R. S. 723, §§ 8, 13.) They may be created to take
effect in the alternative, and a fee may be limited on a fee
upon a contingency. (Id. 724, §§ 24, 25.)

It follows that by the provision of the fifth article of the
declaration of trust a vested future estate in Cordelia was cre-
ated, which would become absolute on the contingency upon
which it was limited. And this estate was acquired by her as
of the time of the creation of the trust. (Id. 726, § 41.)

The further and important question in this connection is
whether this estate did descend to her children and become
absolute on their death. As an expectant estate is descendible
(Id. 725, § 35), such was the effect of the survival of her by
them unless it was defeated by her death.

It is urged by the defendant that the future estate of the
widow Cordelia was dependent upon not only the death of the
children while in minority, but also upon her surviving them.
This becomes a matter of construction of the declaration of
trust. Because her survivorship of the children was not essen-
tial to such expectant estate, unless made so by the contingency

upon which it was limited, although it could not become absolute without the death of the children in minority, and the estate so descending from their mother never could be enjoyed by them. (*Hennessy* v. *Patterson*, 85 N. Y. 91; *Kenyon* v. *See*, 94 id. 563; *Van Axte* v. *Fisher*, 117 id. 401; *Griffin* v. *Shepard*, 124 id. 70.)

It may be observed that the provisions of the fifth article of the declaration of trust do not in express terms make such survivorship of Cordelia a contingency upon which the conversion of her future estate into an estate in possession was made dependent. But it is the duty of the court to give effect to the intent with which the declaration of trust was made, so far as such intent can be collected from the whole instrument. (1 R. S. 748, § 2.) And for this purpose reference may be had to the general scheme of the trust, its object and purpose as so represented. It appears to have been created solely for the benefit of the widow and children of the grantor, and for that purpose to enable the trustee to sell and dispose of the property, as well as to receive the rents and profits. He was to pay one-third of them and of the proceeds of sales to the widow, and invest for the benefit of the children the other two-thirds, less sufficient for their maintenance and education to be received by her. This was to continue during her life, unless during that time the children reached the age of majority, or unless at the option of the trustees, and with the consent of the widow, a conveyance was sooner made of the property to the children, in which event it should be made to them subject to her dower, and if not so made before their majority, the property should then be conveyed to them in like manner, subject to her dower if she survived that period of time. The trust, if not ended before, was to terminate with their minority. The opportunity for its earlier termination, unless both of them should in the meantime die, was defeated by the death of the widow. It was designed that she should take the property in the event the trust was terminated by the death of the children under age. That is to say, if by reason of the early death of the children they were unable to

take the property under the trust, she would be entitled to it. This was the apparent purpose of the provisions of the fifth article. The creation in the widow of an expectant estate, which would on her death, while the children were in minority, descend to them, could be of no value to them in case they, or either of them, reached the age of maturity, as then they would be entitled to the property and would take it by virtue of the trust; and if they should not reach that period in life, it could not be enjoyed by them because it could become an estate in possession, only by means of their death in the age of minority. The situation thus presented would be such that on their survival of their mother, the children would have two vested future estates, the one to become absolute on their demise in minority and to be superseded by the other if they reached the age of majority. If, however, such was the intent, it must be effectuated. But it is seen that the respective interests of the beneficiaries in the income and profits of the property during the continuance of the trust were defined; and in like manner were they preserved in the property on the termination of the trust in the event all of the beneficiaries survived it. And it quite evidently appears by the instrument that the primary purpose in respect to the final disposition of the property as between those persons, was that subject to the dower interest to be reserved for the widow, it should go to the children, and only in the event that they did not survive the opportunity to take the property, it should go to the widow for her use and benefit; and that to reach her in this order of vesting the estate in possession, her survival of the event which should defeat the right of the children to take it was essential. This apparently seems to have been the scheme in view in creating the trust and is in general harmony with its declared purposes. And it may be observed that there were no words of grant or gift to Cordelia other than as expressed in the purpose to convey to her in the specified event for her use and benefit. This purpose so expressed tended somewhat to show the understanding of the provision by the trustee in respect to the personal relation of the widow

to the right to do so when the event should occur upon which she would be permitted to take the property. That provision is that, " In case of the death of both of said children before the age of maturity I am to convey   *   *   *   to the said Cordelia for her sole use and benefit forever."

We do not assume that a conveyance was essential to perfect her right to the property when the event occurred which entitled her to it. But reference is made to the expression used by the trustee as indicative, so far as it may be, of his intention in respect to the event upon which such provision made for the benefit of Cordelia should become effectual to convert her future estate into a present one.

In *Hennessy* v. *Patterson*, the provisions of the will furnished nothing indicating any intent of the testator to make the survivorship of his nephew a contingency upon which his right to take under the devise should depend. But the purpose there was apparent to defeat descent of the property to those not of his blood on the death of his daughter to whose use its income was devoted during her life.

And it may be observed that upon doubtful construction the tendency of the law is to favor that which permits descent to remain in the line of ancestral blood. (*Quinn* v. *Hardenbrook*, 54 N. Y. 83 ; *Wood* v. *Mitcham*, 92 id. 375.)

Without proceeding further with the discussion of this question, we think that the intent of the persons creating the trust, as such intent may be collected from the whole instrument, was that not only the death of the children under the age of twenty-one years, but the survivorship of them by their mother was an element of the contingency upon which her future estate was limited. In reaching this conclusion, no consideration has been given to the earlier instrument executed by the defendant upon the subject of the trust, because on review of the determination on which the motion for a new trial was founded, questions of law only can be brought to the attention of the court. (*Dorchester* v. *Dorchester*, 121 N. Y. 156.)

These views lead to the conclusion that the expectant estate

of the widow Cordelia was defeasible, and by her death before that of the children it was defeated, and if as the consequence the future estate of those children became indefeasible, the inheritance was from them, and in view of the facts as found in respect to the survivorship of one of the children by the other, one-half of the estate upon that assumption descended first to such survivor, and from and through him the whole of it to the parties to this action in the proportion of three-fourths to the defendant and one-fourth to the plaintiff. But whether the descent was from the children, or by means of reversion from the creator of the trust to his heirs is not essentially a question now here, and, therefore, is not considered.

The defendant sought to review the determination of the referee by appeal from the interlocutory judgment as well as by motion for a new trial. While the appeal from the judgment to the General Term was unauthorized (*Dorchester* v. *Dorchester, supra*), the motion for a new trial was properly made there. (Code, § 1001.) The issues were tried before a referee appointed pursuant to consent of the parties in open court. And in such case it seems that when not otherwise provided by the stipulation, the court must, if a new trial is granted, appoint another referee. (Code, § 1011; *May* v. *Moore,* 24 Hun, 351; *Lennon* v. *Smith,* 18 N. Y. Supp. 213.) The interlocutory judgment was by the General Term reversed "and a new trial granted at Special Term." The plaintiff's counsel takes the objection that as no review could be had upon the appeal from the judgment the reversal was unauthorized; and that the court erred in directing a new trial at Special Term. The view taken leads to the conclusion that the defendant was entitled to a new trial upon the motion made therefor.

The remaining question is whether by reason of the reversal and the ordering of a new trial at Special Term the result here can be other than judgment absolute against the plaintiff. We think it cannot. (Code, § 191.)

In *Dorchester* v. *Dorchester* it was said *obiter* that upon the motion for a new trial the General Term was authorized "to

reverse the interlocutory judgment." However that may be, there is no substantial difference in effect between the reversal of it and the setting it aside. The latter would be the consequence of the granting of a new trial. And the plaintiff, by motion, may have obtained relief from the direction of a new trial at Special Term and had another referee appointed to hear and determine the issues.

In view of the circumstances the defendant should not have costs.

The order should be affirmed and judgment absolute directed against the plaintiff, without costs.

All concur.

Order affirmed and judgment accordingly in favor of defendant.