CAROLINE BULLION, Respondent, *v.* CHARLES A. BULLION and Another, Appellants.

*Action to set aside a transfer of property as fraudulently obtained — negligence no bar — reversal upon questions of fact — evidence — reference to state an account — requests to find — appeal from an interlocutory judgment, not authorized before 1893.*

Where one sues another for negligence, his own negligence contributing to the injury constitutes a defense to the action; but where one sues another for positive willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief.

Upon the review of questions of fact, to justify a reversal it must appear that the findings of fact were against the weight of evidence, or that the proof so clearly preponderated in favor of a contrary result that it could be said, with a reasonable degree of certainty, that the trial court erred in its conclusions.

What evidence is sufficient to sustain the finding by a referee that a transfer of property from a mother to her son was fraudulently obtained and was void.

In an action brought to set aside a transfer of property on the ground that it had been fraudulently obtained, it is not error to allow evidence of the plaintiff to remain in the case to the effect that she did not understand the writing in question to be a deed when it was read over to her, and that she supposed it to be a lease.

Nor is it a good ground of objection by the defendant that the plaintiff is allowed to testify that she put all the confidence in the world in her son, to whom the transfer was made, and did not suppose he would take advantage of her, where the effect of her testimony previously given upon direct and cross-examination indicated that she had confidence in her son, and that at the time she was not laboring under any supposition that he would take advantage of her.

Upon the trial, in response to the question "What did you go to Monticello for?" the plaintiff, under the objection of the defendants, testified, "Went to draw writings; we were going to rent the farm. He sent for him before we got there; we had set a day and he knew we were coming on such a day to draw writings."

*Held,* that no error was committed in receiving the answer.

What provisions laid down by the referee in such a case, providing for the appointment of a referee to state an account between the parties and laying down a rule for his guidance upon such reference, are equitable.

Where a request to find presents more than one proposition, a referee is not bound to analyze it and pass upon the several parts separately.

Prior to the taking effect of the amendment of section 1349 of the Code of Civil Procedure made by the Legislature of 1893, an appeal from an interlocutory judgment was not authorized, and though no question might be raised by either party as to its regularity, the General Term had not power to entertain such an appeal.

APPEAL by the defendants, Charles A. Bullion and Ettie Bullion, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Otsego on the 27th day of June, 1893, upon the report of a referee, with notice of an intention to bring up for review upon such appeal the interlocutory judgment dated the 27th day of June, 1893.

The plaintiff is the mother of the male defendant, who, according to the findings of fact, fraudulently obtained a transfer of her personal property and a conveyance of her real estate to him, which, by the conclusions of law stated by the referee, were void and were set aside.

The referee, in his conclusions of law, provided :

"That a referee be appointed by the court to take and state the account between the plaintiff and defendant Charles A. Bullion, of all matters upon the one side relating to monies advanced and expended for, or on account of, permanent improvements upon said farm and taxes, the payment of debts against the plaintiff for monies expended for, or on account of, her or her husband ; and, on the other hand, on account of all property received by the said Charles from his mother and not returned, for the use and occupation of the premises during the time that he has occupied the same, and of all matters that he has received from his mother in connection with or in said transaction, and that the party in whose favor a balance shall be found to exist upon such accounting have judgment therefor against the other upon the coming in of said referee's report, with such costs of said accounting as the court may think proper to allow."

*Albert C. Tennant,* for the appellants.

*Edick & Smith,* for the respondent.

HARDIN, P. J. :

Upon the evidence before the referee he found the general features of the relations of the parties to each other, prior to the interview which took place in the presence of an attorney who was employed to prepare the papers that had been under contemplation, and referred to in the negotiations had between the plaintiff and the male defendant. Upon the evidence, somewhat conflicting, the referee has found in accordance with the testimony delivered by the plaintiff, giving her credence instead of believing the testimony given by the defendant upon the subject of the transfer of the property by the plaintiff to her son.

In *Albany City Savings Institution* v. *Burdick* (87 N. Y. 49) it was said : " It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief, that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action ; but where one sues another for a positive willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief. If the rule were otherwise, the unwary and confiding; who need the protection of the law the most, would be left a prey to the fraudulent and artful practices of evil-doers." The doctrine just quoted was approved in *Smith* v. *Smith* (134 N. Y. 65), and LANDON, J., said of it, viz.: " It does not, in cases like this, impute inexcusable negligence to that omission of vigilance and care which is procured by the fraud of the wrongdoer." The referee found expressly "that Charles A. Bullion, at the said time, was in the prime of life, in full health, and fully understood the nature of the transaction in which he was engaged; knew that the result was to convey to him the fee of said land and the title to all the property, personal and real, of every description, that belonged to his mother, and that she was left entirely destitute and dependent upon him ; and that he was giving her no consideration whatever, further than what was contained in the agreement to support her, and a few privileges mentioned therein ; that he was giving no security for the faithful performance of his agreement, and knew that in procuring said deed of said farm, and said transfer of personal property, was a fraud upon his mother ; and I find from the proof, as matter of fact,

that the said deed and transfer of personal property were fraudulently procured by the defendant Charles A. Bullion." This finding is contested very stoutly by the appellants, and it is insisted that many facts and circumstances are disclosed in behalf of the defendants that are inconsistent with the finding and conclusion of the referee. On the other hand, it is contended in behalf of the respondent, that the testimony given by the plaintiff, considered in the light of the circumstances disclosed by the relations between the parties, and the transactions in which they were actors, and due deference being given to the version produced by the plaintiff where there is a conflict in the testimony, that the referee was warranted in reaching the conclusion stated in the finding just quoted. In disposing of the finding of fact which is so stoutly challenged by the appellants, we are disposed to apply to it the rule found in *Baird* v. *Mayor* (96 N. Y. 577), in which case RUGER, Ch. J., said: "To justify a reversal it must appear that such findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result that it can be said with a reasonable degree of certainty that the trial court erred in its conclusions. It was, undoubtedly, the duty of an appellate tribunal, where it is invested with the power of reviewing questions of fact, already passed upon by a court of original jurisdiction, to examine the evidence and to determine the facts for itself, and the rule forbidding a reversal where there is conflicting evidence, or some evidence to sustain the finding, does not apply to such a case. But when there is evidence on both sides, and the case is balanced and the mind of the court has been called upon to weigh conflicting statements and inferences, and decide upon the credibility of opposing witnesses, much weight must be accorded to the special adaptation of the trial court to investigate and determine such questions. Any other rule would nullify the peculiar advantages which that tribunal possesses, in observing the manner and appearance of the witnesses produced, and the various physical and mental peculiarities by which the mind of the professional observer determines the degree of credit which ought prudently to be attached to oral testimony." The doctrine of the *Baird* case was approved in *Aldridge* v. *Aldridge* (120 N. Y. 617), and near the close of the opinion in the latter case the court adverted to the rule that full effect should be given to the opportunity that

the trial court " had to hear the evidence and observe the manner of the witnesses." The evidence upon which the referee was called upon to act, which came from the lips of the plaintiff, as well as from some other sources, indicates that the plaintiff was advanced in years, not familiar with business transactions or legal papers, and that her husband was not a first-class business man, and that when she had the interview with her son, which resulted in the convey- ance which is now challenged, she entertained kindly, motherly rela- tions to him, having confidence in him; that he was impecunious himself, having no property of any substantial value besides such as he by the transaction in question acquired from his mother; that she had other children who, if the conveyance was allowed to stand, would be deprived of the possibility of inheriting from her, chil- dren who were in needy circumstances, although they were on friendly relations with her, and that the effect of the papers exe- cuted was to divest the plaintiff, not only of her real estate, but of her personal property, gratuitously transferring to the possession of the defendant Charles some $6,500 worth of property; under such cir- cumstances it is not in the province of this court to say that the find- ing of fact on the main issue is against the evidence, nor that it is wholly unsupported by the evidence furnished upon the hearing. It appears that as the papers were about consummated there was some suggestion made about keeping them secret. The deed was not recorded until after the plaintiff had discovered the fraud and begun to take measures to recover possession of her property again, and in one interview which the defendant Charles had with one of his brothers he denied that he had a deed of the farm, putting for- ward the idea that it was only a lease; as his brother, George D., testifies, that in a conversation held with him in the winter of 1891, Charles said he had leased his mother's farm. The foregoing views lead us to approve the main proposition of fact as found by the referee.

(2) When the plaintiff was giving her testimony she was asked : " Q. What did you go to Monticello for ? " This was objected to and the objection was overruled and an exception was taken by the defendants. The answer was : " Went to draw writings; we were going to rent the farm. He sent for him before we got there; we

had set a day and he knew we were coming on such a day to draw writings." We think no error was committed in receiving the answer. Nor do we think it was error to allow evidence to remain in the case stated by the plaintiff that she did not understand the writing to be a deed when it was read over to her, and that she did suppose it to be a lease. Upon an issue of fraud the circumstances referred to by her were not improper. Criticism is made upon the ruling of the referee, which allowed the evidence to stand as to the effect that she " put all confidence in the world in him; I did not suppose he would take advantage of me." The effect of her testimony already given, and the effect of the testimony given by her in the cross-examination, indicated that she had confidence in her son and that at the time she was not laboring under any supposition that he would take advantage of her. The allowance of those facts, under the circumstances, as the witness was situated, are not believed to be error which is prejudicial to the defendant.

The learned counsel for the appellant presented to the referee numerous requests to find matters of fact, many of which the referee approved. Some of the requests he refused to find and as to others he stated that he refused " to find differently from what I have found." Many of the requests were on minor features of the evidence and some of them that were refused were based upon evidence which was conflicting. Several of the requests presented more than one proposition to the referee. It was said in *David* v. *Leopold* (87 N. Y. 620) that " Where a request to find presents more than one proposition, a referee is not bound to analyze it and pass upon the several parts separately." We think the exceptions to the refusals to find do not require us to disturb the conclusion reached by the referee. In the conclusions of law stated by the referee, he has provided for a reference and also has provided that the referee shall so state the account as to preserve the equities of the grantee, and the rule laid down guiding the reference is quite as favorable as the defendant was entitled to have stated. (*Baldwin* v. *Short*, 28 N. Y. St. Repr. 107.)

We have so far considered the appeal upon the merits, and if the appeal was properly before us we should affirm the judgment. It appears, however, that the appeal is from an interlocutory judgment, and that such an appeal was not authorized prior to the amendment

of section 1349 of the Code by the Legislature of 1893. The appeal was taken prior to the time when such amendment was to take effect. Although no question was raised by either party to the appeal on the argument as to its regularity, we doubt our jurisdiction to entertain the appeal. (*Dorchester* v. *Dorchester*, 121 N. Y. 156 ; *Knowlton* v. *Atkins*, 134 id. 322.) We conclude to dismiss the appeal, with costs of the appeal.

MARTIN and MERWIN, JJ., concurred.

Appeal dismissed, with costs.