BROOKLYN HEIGHTS R. CO. v. BROOKLYN CITY R. CO.

(Supreme Court, Appellate Division, Second Department. May 5, 1905.)

1. JURY—RIGHT TO JURY TRIAL—WAIVER—REFERENCE.
   Where a reference is ordered upon consent and proceeds without objection, any constitutional right of the parties to trial by jury is waived.
   [Ed. Note.—For cases in point, see vol. 31, Cent. Dig. Jury, § 188.]

2. REFERENCE—RESIGNATION OF REFEREE—APPOINTMENT OF NEW REFEREE.
   The resignation of a referee after his appointment and service for a considerable time is a "refusal to serve," within the meaning of Code Civ. Proc. § 1011, requiring the court to appoint another referee where the referee named in the stipulation refuses to serve.

Appeal from Special Term, Kings County.

Action by the Brooklyn Heights Railroad Company against the Brooklyn City Railroad Company. From an order appointing a referee, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and MILLER, JJ.

William C. De Witt, for appellant.

Charles A. Collin (John L. Wells and C. A. Severance, on the brief), for respondent.

JENKS, J. In Baird v. Mayor, 74 N. Y. 382, the appellant had opposed the reference ordered, but suffered it to proceed without further objection. The court held that this was a consent, which

involved a waiver of any constitutional right to trial by jury. A fortiori the ruling applies to the case at bar, for not only did this reference proceed without objection, but it was ordered upon consent. I think that the court had no alternative. It was bound, under section 1011 of the Code of Civil Procedure, to appoint a referee in place of Judge Dillon. May v. Moore, 24 Hun, 351, cited in Knowlton v. Atkins, 134 N. Y. 322, 31 N. E. 917, and Hustis v. Aldridge, 144 N. Y. 508, 39 N. E. 649, are directly in point.

Upon the language of the statute it is argued by the learned counsel for the appellant that, inasmuch as the referee had accepted the appointment and had served for a long time, his resignation thereafter was not a refusal to serve, inasmuch as "the word 'refusal' in its derivitive and intrinsic meaning, includes the idea of absolute rejection." Accepting the etymology, I fail to see the force of the contention; for I think, generally speaking, that when the service contemplates the doing of a definite work there may be a refusal to serve after one has begun the work, which refusal may include the idea of an absolute rejection of the service. What mishaps does the statute, contemplate? Plainly one of them is the declination of a referee to execute his commission. The service in this case contemplates his hearing of all the evidence and his determination thereafter upon the evidence. If the referee stop short of this, and absolutely decline to proceed further, to my mind he refuses to serve as much as if he had declined the commission at the outset. He who will serve no longer, leaving his work undone, refuses to serve, and he may thus "reject" the service as "absolutely" as if he had never entered upon it. To refuse is literally to pour back, i. e., to send back (Crabb's Syn.; Cent. Dict.); and if a referee, as in this case, resign ere he has executed his office, he thereby gives back his office, and refuses to serve as such officer (authorities supra; Biddle v. Willard, 10 Ind. 62).

The mandate of the statute, as interpreted by the decisions and the acts of the parties, precludes any discussion upon the broad lines suggested by the learned counsel for the appellant, while the suggestions as to the policy of the procedure can be addressed to the referee.

The order should be affirmed, with costs.

Order appointing new referee affirmed, with $10 costs and disbursements. All concur.