THE BROOKLYN HEIGHTS RAILROAD COMPANY, Respondent, *v.* THE BROOKLYN CITY RAILROAD COMPANY, Appellant.

*A consent to à reference waives the constitutional right to a jury.— a refusal of the referee to proceed, after entering upon the reference, requires the appointment of a new referee.*

A party to an action, by consenting to the appointment of a referee to hear and determine the issues therein, waives any constitutional right which he may have to a jury trial of said action.

If the referee originally appointed resigns after having served for a long time, but before he has completely executed his office, such resignation constitutes a "refusal" to serve within the meaning of section 1011 of the Code of Civil Procedure, and the court is bound under such section to appoint another referee in his stead.

APPEAL by the defendant, The Brooklyn City Railroad Company, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 9th day of March, 1905, appointing a new referee to hear and determine the issues in the above-entitled action, the evidence having already been taken before another referee.

*William C. De Witt* [ *William C. Trull* with him on the brief], for the appellant.

*Charles A. Collin* [*John L. Wells* and *C. A. Severance* with him on the brief], for the respondent.

JENKS, J. :

In *Baird* v. *Mayor* (74 N. Y. 382) the appellant had opposed the reference ordered, but suffered it to proceed without further objection. The court held that this was a consent which involved a waiver of any constitutional right to trial by jury. *A fortiori* the ruling applies to the case at bar, for not only did this reference proceed without objection, but it was ordered upon consent. I think that the court had no alternative. It was bound under section 1011 of the Code of Civil Procedure to appoint a referee in place of Judge DILLON. *May* v. *Moore* (24 Hun, 351 ; cited in *Knowlton* v. *Atkins,* 134 N. Y. 322) and *Hustis* v. *Aldridge* (144 id. 508) are directly in point.

Upon the language of the statute it is argued by the learned counsel for the appellant that inasmuch as the referee had accepted the appointment and had served for a long time, his resignation thereafter was not a refusal to serve, inasmuch as "the word 'refusal,' in its derivitive and intrinsic meaning, includes the idea of absolute rejection." Accepting the etymology, I fail to see the force of the contention, for I think, generally speaking, that when the service contemplates the doing of a definite work, there may be a refusal to serve after one has begun the work, which refusal may include the idea of an absolute rejection of the service. What mishaps does the statute contemplate? Plainly one of them is the declination of a referee to execute his commission. The service in this case contemplates his hearing of all the evidence and his determination thereafter upon the evidence. If the referee stop short of this, and absolutely decline to proceed further, to my mind he refuses to serve as much as if he had declined the commission at the outset. He who will serve no longer, leaving his work undone, refuses to serve, and he may thus "reject" the service as "absolutely" as if he had never entered upon it. To refuse is literally to pour back, *i. e.*, to send back (Crabb's Eng. Syn.; Cent. Dict.), and if a referee, as in this case, resign ere he has executed his office, he thereby gives back his office and refuses to serve as such officer. (Authorities, *supra; Biddle* v. *Willard,* 10 Ind. 62.)

The mandate of the statute, as interpreted by the decisions, and the acts of the parties preclude any discussion upon the broad lines suggested by the learned counsel for the appellant, while the suggestions as to the policy of the procedure can be addressed to the referee.

The order should be affirmed, with costs.

HIRSCHBERG, P. J., BARTLETT, WOODWARD and MILLER, JJ., concurred.

Order appointing new referee affirmed, with ten dollars costs and disbursements.